Joanne NELSON
v.
SNOWRIDGE, INC. d/b/a Sugarbush Resort.
Civ. A. No. 2:91–CV–164.
United States District Court, D. Vermont.
April 1, 1993.

Gareth H. Caldbeck, Caldbeck & Schweitzer, Shelburne, VT, for plaintiff.

David L. Cleary, David L. Cleary Associates, Rutland, VT, for defendant.

## OPINION AND ORDER

PARKER, Chief Judge.

Plaintiff Joanne Nelson commenced suit against Snowridge, Inc. d/b/a Sugarbush Resort ("Sugarbush") for injuries sustained in an accident she had while skiing at Sugarbush Resort on March 11, 1991. Plaintiff is a resident of New Jersey, and Sugarbush is a Vermont corporation doing business in Warren and Fayston, Vermont. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Sugarbush moved this Court for permission to file its motion for summary judgment out of time, and the motion was granted. For the following reasons, Sugarbush's motion for summary judgment is granted.

## BACKGROUND

Since this Court is deciding a motion for summary judgment, the following factual account is given in the light most favorable to Nelson, the non-moving party. *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988).

Joanne Nelson is an expert skier. As of March 11, 1991, the date on which Nelson sustained the injury that is at issue in this litigation, she had been skiing for fourteen years and had been an expert skier for four or five years prior to that date. On March

11, Nelson and three friends were skiing at Sugarbush North on the first day of their week-long vacation. The edges of Nelson's skis had been checked for sharpness the night before, and the group began skiing at about nine in the morning. At approximately eleven that morning and upon the suggestion of one of Nelson's friends, the group decided to ski a trail that Nelson had not yet skied, "Upper FIS." A good portion of this trail was visible from the chairlift. Nelson commented that it "looked good, like it had a lot of powder," and had no reservations about the conditions of the trail. She was unable to see the top of the trail, however. She did know that Upper FIS was designated a double black diamond trail, meaning it was more difficult to ski than those trails designated "most difficult."

Nelson could not see the top of Upper FIS from above the trail because a lip jutted out over the trail. Because of this lip, Nelson and two of her friends entered Upper FIS from the side. She did not see any caution signs as she went around to the side. As she came out of the side entrance to the trail, Nelson noticed that the trail was very icy, an ice she described as a "shiny glaze," and so hard that one could not put a ski pole in it. Looking across the trail, Nelson could not discern exactly how far the glaze extended, but she knew there was some good snow below the expanse of glaze. Although she doesn't recall exactly why, Nelson recalls that the left side of the trail as she looked down the hill was not skiable, and it would have been extremely difficult to attempt to go back up the trail to avoid skiing it.

Believing that it was her best, safest, and easiest option, Nelson began to slowly follow one of her friends across the glazed area, trusting him to act as navigator. She made one or two wide turns and was attempting to reach her friend, who had successfully navigated the glazed area, when she slipped and fell while attempting to insert her pole into the ice she was standing on. The trail was very steep, and Nelson slid rapidly until she hit a tree on the side of the trail near the bottom of the pitch. Nelson suffered numerous injuries including a broken collarbone, clavicle, fractured skull, crushed vertebra, and fractured ribs.

Nelson alleges that Sugarbush was negligent in failing to properly maintain Upper FIS, in failing to warn the public of the dangerous nature of the conditions on the trail, and in failing to close the trail when it presented such a danger to the skiing public. Sugarbush has moved for summary judgment, asserting that Nelson's recovery is barred by 12 V.S.A. § 1037, that she was contributorily negligent in skiing the trail, and that she assumed the risk of injuring herself when she continued to ski on the trail with knowledge of its icy condition.

## DISCUSSION

### I. Standard of Review

It is appropriate to grant summary judgment to the moving party when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue as to a material fact when no reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could find in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All ambiguities and reasonable inferences must be resolved in favor of the non-moving party. *Levin v. Analysis & Technology, Inc.,* 960 F.2d 314, 316 (2d Cir.1992).

### II. Assumption of the Risk under 12 V.S.A. § 1037

Sugarbush asserts that it cannot be held liable for Nelson's injuries because, as a matter of law, she accepted a risk inherent in the sport of skiing—that of falling on an icy expert trail and colliding with a natural object. It bases its argument on Vermont's statutory provision governing assumption of the risk in sports activities, 12 V.S.A. § 1037 (Supp.1992). This provision states, "Notwithstanding the provisions of section 1036 of this title [comparative negligence], a person who takes part in any sport accepts as a matter of law the dangers that inhere therein insofar as they are obvious and necessary."

Although the language of this provision is quite general in its applicability to sporting activities, it was specifically enacted with injuries at ski areas in mind. The second paragraph of the legislative history accompanying the enactment of this section states:

> It is the purpose of this act to state the policy of this state which governs the liability of operators of ski areas with respect to skiing injury cases, including those resulting from both alpine and nordic skiing, by affirming the principles of law set forth in *Wright v. Mt. Mansfield Lift, Inc.*, and *Leopold v. Okemo Mountain, Inc.*, which established that there are inherent dangers to be accepted by skiers as a matter of law.

1977 Vermont Pub.L. No. 119. The event that sparked the enactment of this provision was the decision of the Chittenden Superior Court in *Sunday v. Stratton Corp.*, (later appealed) which lower court decision appeared to eliminate the defense of assumption of the risk in a downhill skiing case in which comparative negligence was an issue. 1977 Pub.L. No. 119. Each of these cases is of some importance to our determination and will be briefly discussed.

*Wright v. Mt. Mansfield Lift, Inc.*, 96 F.Supp. 786 (D.Vt.1951) was the earliest of the Vermont ski area cases to apply assumption of the risk to bar recovery for injuries sustained in a ski accident. In this case, the plaintiff sued for damages sustained when she hit a snow-covered stump while skiing an intermediate trail and broke her leg. After commenting on the risks that one may encounter while skiing, the court stated, "[t]he doctrine of volenti non fit injuria applies. One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary." *Id.* at 791. The court also noted the duty of the ski area operator with regard to its business invitees, stating "[i]t cannot be that there is any duty imposed on the owner and operator of a ski slope that charges it with knowledge of these mutations of nature and requires it to warn the public against such." *Id.* The court therefore directed a verdict for the defendants, finding that in fact snow covered stumps were an obvious and necessary part of skiing, and that plaintiff had accepted such obstacles as a danger inherent to the sport.

A similar result was reached by then United States District Judge Coffrin when he directed a verdict for the defendant in the case of *Leopold v. Okemo Mountain, Inc.*, 420 F.Supp. 781 (D.Vt.1976). This case was a wrongful death action, in which the family members of the dead skier sued for damages stemming from an accident in which the skier had died from hitting a lift tower. The court applied the principles of *Wright* and noted:

> While it is arguable, perhaps, that some of the hazards created by towers situated in the Liftline trail at Okemo Mountain could have been reduced or eliminated prior to February 20, 1972 and were therefore not absolutely "necessary," the fact is that those hazards *were* "obvious and necessary" to any skier who chose to ski the trail on that date.

*Id.* at 786. A comment of the court in a footnote sets out a doctrine called "primary assumption of the risk," a doctrine of some importance to this decision. In its formulation of this doctrine, the court stated, "[t]he skier, not the ski area operator, is the logical one to make the choice as to whether he should proceed and assume the consequences of skiing in an area where a plainly apparent and necessary danger exists." *Id.* at 787 n. 2.

■ The Vermont Supreme Court clarified the concept of primary assumption of the risk in the important case of *Sunday v. Stratton Corp.*, 136 Vt. 293, 390 A.2d 398 (1978), decided after the enactment of 12 V.S.A. § 1037. The essence of the doctrine of primary assumption of the risk is that certain situations involve dangers so obvious and necessary that the defendant does not owe any duty to the plaintiff, and therefore is not required to warn its patrons of the dangers or take any steps to eliminate them. 136 Vt. at 301, 390 A.2d at 403; *see also* C. Robert Manby, Note, *Assumption of Risk After Sunday v. Stratton Corporation: The Vermont Sports Injury Liability Statute and Injured Skiers,* 3 Vt.L.Rev. 129, 136–45 (1978). The *Sunday* case did not present such a situation, however. The plaintiff in

*Sunday* claimed that he had snagged his ski on brush at the edge of the novice trail on which he was skiing. The Court found that the defendant did in fact owe a duty to the plaintiff, given its exhaustive efforts in eliminating any hazards from the trail upon which the plaintiff was injured, and also in light of the fact that the defendant had made no effort at trial to prove that encountering brush *was* an obvious and necessary danger of skiing. 136 Vt. at 300, 390 A.2d at 402.

Although the *Sunday* case appears at first glance to depart from the rules of *Wright* and *Mt. Mansfield,* in fact they differ only in result. *See Dillworth v. Gambardella,* 970 F.2d 1113, 1119 (2d Cir.1992). When these two cases are read in conjunction with 12 V.S.A. § 1307, the question for determination is were the dangers encountered by Nelson obvious and necessary and therefore inherent to the sport of skiing, or did Sugarbush owe Nelson a duty of warning her of or correcting a non-obvious and unnecessary danger, which in the exercise of reasonable prudence in the circumstances could have been foreseen and corrected? *Id.*

■ The question of what dangers are obvious and necessary and therefore inhere in a sport is generally one for a jury to decide. *Id.* However, "summary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). This is such a case.

Although reasonable minds could differ on the question of whether brush on a novice trail (*Sunday*) or collisions between skiers (*Gambardella*) are obvious and necessary dangers in the sport of skiing, and whether lift towers (*Leopold*) and stumps (*Wright*) present sufficient questions so that a full factual inquiry is desirable before it is determined whether such risks are obvious and necessary, no reasonable mind could fail to immediately conclude that ice is a necessary and obvious danger of skiing in Vermont. In *Sunday,* the Court made great efforts to distinguish *Wright,* discussing at some length the significant improvements in grooming technology that ski areas have made since the 1950s. *See Sunday,* 136 Vt. at 300, 390 A.2d at 402. No improvements in grooming technique have been able to eliminate ice from the New England ski slopes, however, often described as "frozen granular" and "eastern hardpack." Ice is both an obvious feature of skiing [1] and a necessary one; despite exhaustive grooming efforts, ice still remains evident on at least some portion of most ski slopes in the East. If a ski area were required to close a trail every time there was ice present, it would surely be forced to curtail its operations for a good part of the ski season. *See* Manby, 3 Vt. L.Rev. at 142 ("Necessary dangers, therefore, must be those which cannot *reasonably* be eliminated by the area operator." (emphasis in original)).

As an experienced skier, Nelson knew that ice is a necessary feature of skiing. She had been skiing for fourteen years, had encountered ice before, and realized that ice is more difficult to traverse than snow. On a double black diamond trail, ice presents special difficulties, of which Nelson was also aware. These difficulties were obvious to Nelson from the time she entered Upper FIS from the side, and were nothing more than the obvious and necessary dangers that inhere in the sport of skiing. Armed with full knowledge of the difficulty plaintiff nonetheless voluntarily determined to ski down the trail. Unfortunately, she fell and was seriously injured.

Ice, being an obvious and necessary danger in the sport of skiing, Sugarbush had no duty to warn Nelson and its other patrons of the icy conditions of the trail, or take any

1. Icy conditions were in fact specifically mentioned by Judge Gibson in *Wright* as one of the hazards skiers encounter on a regular basis:

> Skiing is a sport ... that requires an ability on the part of the skier to handle himself or herself under various circumstances of grade, boundary, mid-trail obstructions, corners and various conditions of the snow.... Snow, ranging from powder to ice, can be of infinite kinds.... Skiing conditions may change quickly. What was, a short time before, a perfect surface with a soft cover on all bumps may fairly rapidly become filled with ruts, worn spots and other manner of skier created hazards.

*Wright,* 96 F.Supp. at 790–91.

steps to attempt to eliminate the ice. This is a fact upon which reasonable minds cannot differ. The facts of this case clearly predestine it for a directed verdict at trial, and summary judgment is therefore appropriate. Because summary judgment is appropriate under 12 V.S.A. § 1037, I need not address plaintiff's other two defenses of assumption of the risk under the Restatement (Second) of Torts § 496, and negligence greater than 50 percent under Vermont's comparative negligence statute, 12 V.S.A. § 1036. *See* 10A Charles Wright, Arthur Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2734 (1983) (summary judgment is appropriate where the moving party has presented at least one legally sufficient defense to plaintiff's claim).

CONCLUSION

For the foregoing reasons, Sugarbush's motion for summary judgment is hereby GRANTED.