1998 SD 32

ESTATE OF Leon O. SHUCK, deceased, Teresa A. Shuck, and Teresa A. Shuck, as Guardian of Cody C. Shuck, Kayla M. Shuck, and Otis N. Shuck, Minors, Plaintiffs and Appellants,

v.

PERKINS COUNTY, South Dakota a political subdivision of the State of South Dakota, and William M. Simpson, Defendants and Appellees.

No. 20147.

Supreme Court of South Dakota.

Argued Jan. 15, 1998.

Decided April 1, 1998.

Rehearing Denied May 6, 1998.

Leroy Hill, Belle Fourche, Timothy J. Rensch, Rapid City, for plaintiff and appellant.

Paul S. Swedlund & G. Verne Goodsell of Gunderson, Palmer, Goodsell and Nelson, Rapid City, for defendant and appellee County.

Mary A. Gubbrud & Thomas G. Fritz of Lynn, Jackson, Shultz & Lebrun, Rapid City, for defendant and appellee Simpson.

GILBERTSON, Justice.

[¶ 1.] This appeal arises out of a single vehicle automobile accident in which Leon Shuck (Leon) was severely injured on a rural gravel road in Perkins County, South Dakota. Leon died approximately one year after the accident due to complications related to his injuries. Summary judgment was granted in favor of defendants. Leon's estate and his heirs now appeal. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On September 26, 1994, Leon, a rural mail carrier in Perkins County, was traveling north on Perkins County Road C–1 (road) when he lost control of his vehicle. The vehicle slid off the shoulder of the gravel road and rolled once, ejecting him from the vehicle. Leon suffered serious injuries, including a broken neck, that rendered him a quadriplegic prior to his death. Leon claimed that he was trying to avoid cattle that were straying in the middle of the gravel road. Other than Leon, there were no witnesses to the accident.

[¶ 3.] William M. Simpson (Simpson) owned the grazing land on both sides of the road where the accident occurred. A fence existed on the western side of the roadway, but the eastern side was not fenced. Fencing is present on both sides of the road in certain places to the north and south of Simpson's land. The road going through Simpson's pasture is owned and maintained by Perkins County.

[¶ 4.] Leon brought suit on April 5, 1995, alleging that Perkins County (County) was negligent in failing to properly and adequately maintain the gravel road under SDCL 31–12–19, that both the County and Simpson were negligent in creation of a dangerous condition by permitting cattle to stray onto the road, and for failure to warn. Leon's wife, Teresa, joined in Leon's suit claiming loss of consortium. Both the County and Simpson claimed that Leon was contributorily negligent, more than slight, and had assumed the risk.

[¶ 5.] Leon died approximately one year after the accident due to complications related to the quadriplegia. On January 12, 1996, after Leon's death, Teresa, as personal representative of Leon's estate and guardian of the three minor children (collectively referred to as the Shucks), amended the initial complaint to include a wrongful death claim. On June 13, 1997, the circuit court granted summary judgment in favor of defendants

Simpson and Perkins County. The Shucks appeal.

## STANDARD OF REVIEW

[¶ 6.] The standard of review applied to the grant or denial of a summary judgment motion in lawsuits involving tort claims is well settled. At we stated in *Julson v. Federated Mutual Insurance Company*:

> Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15-6-56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin*, 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

1997 SD 43, ¶ 5, 562 N.W.2d 117, 119 (quoting *Ford v. Moore*, 1996 SD 112, ¶ 7, 552 N.W.2d 850, 852); *accord VerBouwens v. Hamm Wood Prods.*, 334 N.W.2d 874, 876 (S.D.1983).

## ANALYSIS AND DECISION

[¶ 7.] **1. Whether summary judgment in favor of Simpson was proper.**

[¶ 8.] While negligence actions are generally not suited for summary judgment,

such a result is proper when the duty question is resolved in the defendant's favor. *Bland v. Davison County*, 507 N.W.2d 80, 81 (S.D.1993) (citations omitted). The existence of such a duty is a question of law subject to de novo review. *Id.* (citing *Brown v. Egan Consol. Sch. Dist. 50–2*, 449 N.W.2d 259 (S.D. 1989)). Therefore, "we must determine if a relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff." *Id.* (citations omitted).

[¶ 9.] Initially, we observe that in reviewing summary judgment decisions, we accept all reasonable inferences that may be drawn from the *facts* in favor of the nonmoving party. *Morgan*, 450 N.W.2d at 785. While the evidence is questionable whether cattle were in the road at the time of the accident, for summary judgment purposes we factually assume this to be true and given the fact that Simpson's land bordered both sides of the road, a portion of which contained no fence, it is a fair inference the cattle were his.

[¶ 10.] Nevertheless, under the present facts, we hold summary judgment proper. Shuck's contend that Simpson was negligent in allowing his cattle to enter upon the gravel road which created a dangerous condition to travelers and in failing to use reasonable care to warn travelers of the danger. There exists no statute in South Dakota which imposes civil liability upon landowners who permit their cattle to run at large upon our highways.[1] Therefore, we look to the common-law.[2]

---

1. Civil liability may be imposed upon a livestock owner where his animals trespass upon the land of another. SDCL 40–28–4. However, there is no allegation that Simpson's animals ever left his ranch. SDCL 40–28–3. *See also Hitzel v. Clark*, 334 N.W.2d 37, 39 (S.D.1983) (decided *after* enactment of SDCL ch. 40–28 and holding that in the absence of a specific statute, *Eixenberger v. Belle Fourche Livestock Exchange*, 75 S.D. 1, 58 N.W.2d 235 (1953), and its progeny provide the usual rules governing the responsibility of livestock owners). Other jurisdictions are in accord by refusing to extend statutes such as SDCL 40–28–4 as a basis for protecting motorists upon public highways from roaming animals. *See* 4

Am.Jur.2d *Animals* § 128 (1995) (collecting cases).

2. *In Eixenberger*, this Court surmised that the lack of legislative action on this subject stemmed not from oversight or inaction but from an inability to draft a statute that would rationally fit the multitude of circumstances and types of roads that exist in South Dakota:

> This state has hundreds of miles of each of these types of road, with all kinds between. All these roads are equally 'highways' under the law; all are subject to the same rules. Yet what would be dangerous on one road, may be perfectly safe on another; what would be legal

[¶ 11.] Early English common-law held that owners of livestock were "immune from liability as a practical matter for casual trespasses on land abutting the highway." *Carrow Co. v. Lusby*, 167 Ariz. 18, 804 P.2d 747, 752 (1990) (citing Prosser and Keeton on Torts § 76, at 540 (5th ed. 1984)). While a few jurisdictions have maintained this early rule of near absolute immunity, others have adopted a "modern" common-law view which has taken into account changed conditions and imposed a duty of ordinary care upon owners of livestock towards motorists traveling on the public highway. 4 Am.Jur.2d *Animals* § 128 (collecting cases).

[¶ 12.] In *Eixenberger v. Belle Fourche Livestock Exchange*, 75 S.D. 1, 5, 58 N.W.2d 235, 237 (1953), this Court adopted the modern common-law rule imposing a duty of ordinary care upon landowners for their roaming animals:

> At common law an owner of a domestic animal is under no legal obligation to restrain it from being at large on the highway unattended, and he is not liable for damages for an injury resulting from its being so at large unless he has knowledge of vicious propensities of the animal or unless he should *reasonably have anticipated that injury would result from its being so at large on the highway.*

(quoting 2 Am.Jur. *Animals* § 60) (emphasis added). In *Hitzel v. Clark*, 334 N.W.2d 37, 39 (S.D.1983), we reiterated that in the absence of a specific statute, *Eixenberger* and its progeny provide the usual rules governing the responsibility of livestock owners. Thus, we look to the facts of each case and consider "[t]he character of the road, the kind of

traffic thereon, the time of day, and all other pertinent facts and the surrounding conditions" to determine whether the defendant should have reasonably anticipated the danger. *Eixenberger*, 75 S.D. at 6, 58 N.W.2d at 238.

[¶ 13.] Simpson argues that he owed no duty to Shuck because the accident occurred on his "open range" grazing area.[3] Although there exists no statutory definition of "open range," this Court recognized in *Eixenberger*, 75 S.D. at 6, 58 N.W.2d at 237, that open range is an area in which livestock are kept at large, unrestrained and unattended.[4]

[¶ 14.] The circuit court properly considered the relevant characteristics of the road and Simpson's adjoining land. A cattle guard is located in the road at the entry to the Simpson land, placing travelers on notice that cattle are likely to be roaming across the road that runs through the grazing land.[5] There are signs along the road which serve to alert approaching motorists to the cattle guards. Only the land on the western side of the road is fenced in. In addition to the cattle guards and signs, Leon's wife testified that prior to the accident Leon and she had seen cattle in the exact area of the road where the accident occurred. *See* 4 Am. Jur.2 *Animals* § 48 (the right to allow horses and cattle to roam at large has been established by custom in some jurisdictions that have not enacted statutory provisions on the matter).

[¶ 15.] In concluding that Leon's injury did not arise from a breach of duty by Simpson, the circuit court noted that the road is an

---

negligence in one case, might be no evidence of want of care in another. These diverse conditions may account for the fact that the legislature has enacted no uniform statute to control in every case.
75 S.D. at 6, 58 N.W.2d at 238.

3. The repeal of the "open range" statutes did not repeal the common-law concerning open range. SDCL ch. 40–24 *repealed*, 1972 S.D.Sess.L. ch. 217, § 3; 1980 S.D.Sess.L. ch. 278 §§ 1–8. The repealed statutes dealt with trespass by cattle and liability for mixing herds.

4. Approximately 13,000 miles of open range country in South Dakota has been recorded with the South Dakota Department of Transportation.

The court in *Culpepper v. Rachal*, 370 So.2d 154, 155 (La.Ct.App.1979), defined "open range" as an area such as Simpson's land "where there is no stock law or ordinance prohibiting an owner from allowing his domestic animals to roam at large." (citation omitted). The court in *Culpepper* went on to hold that an open range landowner is under no duty to keep his animals enclosed. *Id.*

5. Livestock guards are authorized to be placed on county highways such as this one by SDCL 31–25–4 to "prevent the passage of livestock."

"infrequently traveled, rural, gravel road."[6] Furthermore, the accident occurred during daylight hours and there is no indication that Leon's vision was impaired prior to the accident. As the innumerable variables concerning highways, from interstate highways to what would be viewed as paths, preclude a bright-line all encompassing standard of statutory conduct, likewise the same conditions preclude adoption of the same type of "universal" rule by this Court. *Eixenberger*, 75 S.D. at 6, 58 N.W.2d at 238. We agree with the circuit court's conclusion that Simpson could not have reasonably foreseen that his cattle could cause injury in this open range country and therefore Simpson did not breach a duty of reasonable care towards Leon.

**[¶ 16.] 2. Whether summary judgment in favor of Perkins County was proper.**

█ [¶ 17.] The Shucks have made two claims against the County. First, the Shucks claim the County created a hazardous condition when it knowingly permitted Simpson to pasture his cattle on its highway and did not require him to fence his pasture. This argument is disposed of as Shucks cite to no statutory authority whereby the County could force Simpson to construct such a fence.

█ [¶ 18.] The circuit court found that SDCL 31–12–19 imposed no duty upon the County to install fences to restrain cattle from roaming upon the road in open range country. We agree. At the time this matter arose, SDCL 31–12–19 provided in part, "It shall be the duty of the board of county commissioners to maintain properly and adequately the county highway system within the county...."[7]

[¶ 19.] In *Bland*, 507 N.W.2d at 82, this Court determined that whether the generic language of SDCL 31–12–19 imposed a duty upon Davison County to remove snow and ice from one of its roads was a question for the jury *if* it was "shown that County had ample time and notice to correct the condition." (citations omitted). The Shucks have made no such showing. This Court recognized that counties should keep their roads in a reasonably safe condition. *Id.* The Shucks invite this Court to extend our interpretation of SDCL 31–12–19 in *Bland* to require the County to erect a fence on Simpson's land. This we decline to do. *Bland* concerned a question of whether snow and ice could render a road defective and unsafe on a well traveled paved road near the population center of Mitchell. The sporadic presence of cattle on a road bordered by open range land, does not render the road inherently defective and unsafe. This is especially true in light of signs and cattle guards which placed the public on notice that animals may be roaming the area.

[¶ 20.] Mandating that the County install fences adjoining every mile of roads bordered by open range area in this state would necessarily result in the elimination of open range grazing. The legislature has seen fit

6. *Cf. Pexa v. Clark*, 85 S.D. 37, 41, 176 N.W.2d 497, 499 (S.D.1970) (distinguishable from present facts because the pasture and accident site "were not in remote rural areas but on the outskirts of the second largest city in the state" and holding that whether the danger of a vehicle colliding with defendant's at large horses should have been reasonably anticipated was a question for the jury). *See also Eixenberger* (upholding a verdict for the plaintiff where the plaintiff's vehicle struck the defendant's horse on U.S. Highway 212 on the outskirts of Belle Fourche); *Hitzel*, (where a cow was struck on Highway 85). However, concurring opinions in both *Eixenberger* and *Hitzel* took the position that cattle at large in remote open range conditions were entirely another matter. *Eixenberger*, 75 S.D. at 11, 58 N.W.2d at 240 (Leedom, J., concurring); *Hitzel*, 334 N.W.2d at 40 (Henderson, J., specially concurring).

7. SDCL 31–12–19 now provides:

The board of county commissioners shall properly and adequately maintain the full maintenance roads on the county highway system within the county by contract or day labor on all or different portions of the system as the board of county commissioners deem expedient. The board shall maintain any federal-aid system highways according to any agreement made by it in consideration of federal aid received for construction and improvement of such highways. The board shall, at its first meeting each year, designate which county roads are full maintenance roads and which are minimum maintenance roads. The board of county commissioners may not designate any county road as minimum maintenance if such road is a school route or mail route.

to authorize "livestock guards over or across county or secondary highways ... which will prevent the passage of livestock" across such guards. SDCL 31–25–4. Thus, the legislature obviously envisioned that livestock could be present on certain roads.[8] The legislature has not evinced an intention to require fencing through open range and in the absence of such a directive, we do not ascertain a common-law basis to do so.

■ [¶ 21.] The final claim is that the County was negligent in maintaining the gravel road by allowing loose gravel to remain on the road, causing Leon to lose control of his vehicle ultimately rolling it. Other than the mere presence of gravel, Shucks cite to no factual evidence that the road was either in a defective condition or out of repair. There is no evidence the County was negligent in the placement or maintenance of the road. Additionally, Shucks cite no statutory or case law authority that loose gravel, by itself, is not an inherent part of a gravel road. Obviously there can be no duty or negligent breach thereof concerning a condition which is inherent to that subject matter. *Fritz v. Howard Township,* 1997 SD 122, 570 N.W.2d at 243 n. 3; *Nelson v. Snowridge, Inc.,* 818 F.Supp. 80 (D.Vt.1993) (ice being an obvious and necessary danger in the sport of skiing, defendant ski area under no duty to take precautions to eliminate ice); *Brett v. Great American Recreation Inc.,* 144 N.J. 479, 677 A.2d 705 (1996) (defendant has no duty with regard to inherent risks). While gravel when initially placed may be compacted by machinery, the passing of time, traffic, weather and the elements can result in that compacted gravel becoming loose. Although Shucks presented the affidavit of their expert Stoner, Stoner did not inspect the accident cite until April 21, 1997, two and one-half years after the accident. While not saying how the conclusion was reached, Stoner concludes, "the vehicle went out of control, due to the loose road surface." This, however,

does not address the question of whether the "loose road surface" was an inherent component of a gravel road.

■ [¶ 22.] Moreover, the record is barren of any evidence that the County prior to the accident possessed "ample time and notice to correct the condition" as required by *Bland.* 507 N.W.2d at 82.

[¶ 23.] Affirmed.

[¶ 24.] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 25.] SABERS, J., concurs in result in part and dissents in part.

SABERS, Justice (concurring in result in part and dissenting in part).

[¶ 26.] I agree that summary judgment was properly granted to County because there is no genuine issue as to any material fact whether County failed to properly and adequately maintain the gravel road. SDCL 15–6–56(c). Nor is there a genuine issue as to any material fact that the road had fallen "out of repair" or that County had notice of the defect. *See generally Fritz v. Howard Township,* 1997 SD 122, 570 N.W.2d 240. I do not join that portion of the majority's discussion regarding whether loose gravel is an inherent part of a gravel road; obviously, there may be a case where the condition of a gravel road amounts to a defect requiring action by County. *Id.* at ¶¶ 11–13. Therefore, as to County, I concur in result only.

[¶ 27.] I dissent from the affirmance of summary judgment to Simpson because whether he "should reasonably have anticipated that injury would result from [his livestock] being so at large on the highway" (¶ 12) is a disputed factual issue which should be determined by a jury. Certainly, reasonable minds could differ whether under these circumstances this accident was foreseeable. *Cf. Musch v. H–D Coop., Inc.,* 487 N.W.2d 623, 625 (S.D.1992) (noting this court's adop-

---

8. Further indication of legislative approval of unfenced open range adjoining county highways is found in SDCL 31–25–9 which was enacted in 1983 well after our decision in *Eixenberger.* That statute allows permissive placement of a sign to notify the public of open grazing. However the statute does not make the placement of such a sign mandatory. It is optional both with the landowner and the county commission. In the case now before us, the public already had received such open range notice by the cattle guard in the highway and accompanying cattle guard sign.

tion of the "foreseeability" approach to determining proximate causation):

> [T]he harm suffered must be found to be a foreseeable consequence of the act complained of. This does not mean, of course, that the precise events which occurred could, themselves, have been foreseen as they actually occurred; only that the events were within the scope of the foreseeable risk. [I]t must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.

In 1981, this court embraced the concept of foreseeability as a requirement of proximate cause in *Leslie v. City of Bonesteel*, 303 N.W.2d 117 (S.D.1981). While that case was tried before the trial court without a jury, we reversed, finding the trial court had improperly used a "but for" standard to determine the proximate cause issue. We held that the trial court must apply the "substantial factor" test. In that case, we went on to state:

> [T]o support a recovery in negligence the defendant's act must have proximately caused the plaintiff's injury. As this Court stated in Goff v. Wang, 296 N.W.2d 729, 730 (S.D.1980), "[t]he issues of whether defendant owed a duty to the plaintiff and whether the defendant's conduct proximately caused the plaintiff's injury are, in effect, so interrelated that they are generally treated as one in the same."

(Other citations omitted); *see also Thompson v. Summers*, 1997 SD 103, ¶ 18, 567 N.W.2d 387, 394 ("Questions of proximate cause are for the jury in all but the rarest of cases."); *accord Eixenberger v. Belle Fourche Livestock Exch.*, 75 S.D. 1, 8, 58 N.W.2d 235, 239 (1953) (reinstating jury verdict for plaintiff injured by horses running at large and noting that questions of owner's negligence were properly submitted to the jury):

> Reasonable minds might very well have drawn different conclusions from the evidence as to whether the defendants should have reasonably anticipated the hazard of horses running at large in the vicinity of

this highway at the time and under the circumstances shown by the evidence.

*Id.* at 9, 58 N.W.2d at 239–40. We should reverse and remand for a jury trial on Simpson's alleged negligence.