1999 SD 88

Harley SHEVLING, Kenneth Shay, John Shay, Michael Shay, and Sylvia Olinger, Appellees,

v.

BUTTE COUNTY BOARD OF COMMISSIONERS, acting in its capacity as the Butte County Board Of Equalization, Appellant.

No. 20810.

Supreme Court of South Dakota.

Considered on Briefs June 1, 1999.

Decided July 14, 1999.

Dwight A. Gubbrud of Bennett, Main & Bailey, Belle Fourche, for appellees.

Terri Lee Williams, Butte County State's Attorney, Belle Fourche, for appellant.

GILBERTSON, Justice

[¶ 1.] Butte County appeals from a summary judgment entered by the Eighth Judicial Circuit, Butte County. The trial court found res judicata or collateral estoppel prevented utilization of a method of

assessment that separately classified agricultural land as irrigable and non-irrigable. We reverse and remand for trial.

## FACTS AND PROCEDURE

[¶ 2.] Henry Shevling, Kenneth Shay, John Shay, Michael Shay and Sylvia Olinger (collectively Shevling) own approximately 320 acres of agricultural land in Butte County. The Belle Fourche River unevenly dissects this land. In 1994 and 1995, Shevling's land had an assessed value of $39,561.00.

[¶ 3.] In 1996, Butte County assessed the land at $148,564.00. This increase was based upon a finding the land was irrigable. Shevling appealed to the Board of Equalization who reduced the assessment to $79,633.00. Shevling appealed the reassessment to the Office of Hearing Examiners, which reversed the County and remanded for reassessment. The reassessed value of the land was reduced to $36,-291.00.

[¶ 4.] In 1997, the Director of Equalization categorized Shevling's land as irrigable and valued the property at $163,420.00. Shevling appealed to the Butte County Board of Equalization. His appeal was rejected. On August 11, 1997, Shevling appealed to the South Dakota Office of Hearing Examiners. The Administrative Law Judge (ALJ) found that Shevling had water rights to approximately 200 acres of the property, however, the water rights were junior rights. Furthermore, Shevling could not pump water from the river during the months of July, August and September and developing the land for irrigation was cost prohibitive. The ALJ concluded Butte County had erred by establishing separate classifications for determining the value of property with irrigation potential. The ALJ ordered Butte County to re-evaluate the property as dry land agricultural property and assess it accordingly.

[¶ 5.] On September 9, 1997, Butte County appealed the ALJ's order to the circuit court. The County claimed Shevling's land was properly assessed as irrigable due to its location, soil, terrain, topography and water rights.

[¶ 6.] In determining the 1997 assessment, Butte County compared the types of soil, as rated by the State according to productivity, location of the property and irrigability. Values for dry land soils and irrigable soils were determined by analyzing sales of comparable property. It was the policy of Butte County that if water rights were available, the property was irrigable if it had certain types of soil.

[¶ 7.] The circuit court concluded the Director of Equalization improperly placed great weight on the fact Shevling had a water right and irrigable soil. It specifically identified the errors committed by the Director as: (1) failure to consider the cost of land preparation for irrigation which in this case could be cost prohibitive, and (2) failure to consider the existing water right was a junior right subject to demands of senior rights and allowing no water whatsoever in the prime growing months of July, August and September. The court further concluded this method of classification resulted in two separate classes of property for agricultural land and was therefore unconstitutional. The court remanded the case for reassessment. The final 1997–assessment amount for Shevling's land is not in the record. Butte County did not appeal the 1997 judgment to this Court.

[¶ 8.] The next year this issue was raised once again. On April 13, 1998, Shevling appealed the 1998 assessment of his land to the Board of Equalization. The 1998 assessed value was once again based on a method that considered the irrigability of the land.[1] The Board refused to alter the assessment.

---

1. Although the total assessment amount for all 320 acres is not in the record, a 160–acre parcel of Shevling's land, which was considered the irrigable agricultural land, increased in value from $19,555 in 1997 to $55,716 in 1998.

[¶ 9.] On May 11, 1998, Shevling once again appealed the Board's decision to the circuit court. A hearing was held on Shevling's motion for summary judgment on August 21, 1998. Judge Bastian issued a bench decision denying Shevling's motion for summary judgment. Later on August 28, 1997, the court, on its own motion, reconsidered and granted Shevling's motion for summary judgment.

[¶ 10.] The trial court could not find a genuine issue of material fact as to preclude summary judgment. In granting summary judgment, the court based its decision on the County Assessor's 1997 and 1998 testimony. The trial court determined the doctrines of res judicata and collateral estoppel prevented relitigation of whether the County was illegally classifying agricultural land as "irrigated" and "nonirrigated" land as it was litigated in 1997. The court then held Butte County's method of separately classifying agricultural land as "irrigable" and "non-irrigable" was unconstitutional and contrary to State law. The trial court reversed and remanded the case and ordered the assessment be made in accordance with South Dakota law.

[¶ 11.] Butte County appeals raising the following issues for our consideration:

1. Whether the doctrines of collateral estoppel and res judicata govern the 1998 assessment of Shevling's agricultural property.

2. Whether the trial court erred in finding Butte County's method of separately classifying agricultural land was unconstitutional and contrary to South Dakota State law.[2]

2. Butte County did not raise this issue in its brief. However, Shevling covers the issue in his reply. The County addresses this issue on rebuttal. Although we may exercise our discretion and review a constitutional issue raised on appeal, we decline to do so here. *Prairie Lakes Health Care, Inc. v. Wookey*, 1998 SD 99, ¶ 35, n. 10, 583 N.W.2d 405, 419,

## STANDARD OF REVIEW

[¶ 12.] The value of land is a question of fact and the trial court will only be overturned if it is clearly erroneous. *West Two Rivers Ranch v. Pennington County*, 1996 SD 70, ¶ 6, 549 N.W.2d 683, 685 (citation omitted). An assessor's valuation will be presumed correct. *West Two Rivers*, 1996 SD 70, ¶ 20, 549 N.W.2d at 687. However, the construction of a statute and its application to the case at hand presents a question of law, which we review de novo. *West Two Rivers*, 1996 SD 70, ¶ 6, 549 N.W.2d at 685.

[¶ 13.] As this case was dismissed in summary judgment, we apply the applicable standard of review.

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

*Estate of Shuck v. Perkins County*, 1998 SD 32, ¶ 6, 577 N.W.2d 584, 586 (internal citations omitted).

## ANALYSIS AND DECISION

[¶ 14.] **Whether the doctrines of collateral estoppel and res judicata gov-**

n. 10. As the entire constitutional issue is predicated upon an initial finding by the trial court of improper assessment methods by the County, its survival hinges on an affirmance of the trial court on the assessment issue. As we reverse summary judgment on the issue of res judicata, the constitutional issue is rendered moot.

ern the 1998 assessment of Shevling's agricultural property.

[¶ 15.] Butte County appeals claiming res judicata and collateral estoppel should not be applied in this case as the assessment methods applied in 1997 and 1998 were substantially different. Thus, it reasons the trial court erred in granting Shevling's motion for summary judgment based on these doctrines. We find there is a genuine issue of material fact as to the similarities of these two assessments.

[¶ 16.] *a. Requirements for assessment*

[¶ 17.] SDCL 10–6–33 provides that "[a]ll property shall be assessed at its true and full value in money." Agricultural land is assessed pursuant to SDCL 10–6–33.1, which provides the assessment, shall be based on the following factors:

(1) The capacity of the land to produce agricultural products... and

(2) The soil, terrain and topographical condition of the property including but not limited to capability, the land's use, climate, accessibility and surface obstructions which can be documented through an analysis of land selling prices[.] [3]

[¶ 18.] Aside from compliance with South Dakota statutory requirements, an assessment must also comply with the following four constitutional provisions. First, South Dakota Constitution Article XI, section 2, requires that the burden of taxation of all property be equitable. Second, agricultural and nonagricultural property may be separated into distinct classes for the purpose of taxation. S.D. Const. art. VIII, § 15. Third, valuation of the property may not exceed its actual value. S.D. Const. art. XI, § 2. Fourth, taxation must be uniform on all property within the same

class. S.D. Const. art. XI, § 2; S.D. Const. art. VIII, § 15. *West Two Rivers,* 1996 SD 70, ¶ 7, 549 N.W.2d at 686.

[¶ 19.] *b. Assessment of agricultural land*

[¶ 20.] It is well settled in South Dakota constitutional law that irrigated farmland cannot be designated a separate class of agricultural property by the taxing authority. *Gould v. Pennington County Board of Equalization,* 1997 SD 129, 570 N.W.2d 846.[4] However, irrigability can be considered a factor in assessing land value. *Id.*

[¶ 21.] *c. Res judicata and collateral estoppel*

[¶ 22.] Res judicata and collateral estoppel, though often used interchangeably, are distinguishable. *Nelson v. Hawkeye Sec. Ins. Co.,* 369 N.W.2d 379, 380 (S.D.1985); *See Schell v. Walker,* 305 N.W.2d 920, 922 (S.D.1981); *See also, Melbourn v. Benham,* 292 N.W.2d 335, 337 (S.D.1980); *Gottschalk v. South Dakota Real Estate Commission,* 264 N.W.2d 905 (S.D.1978). "Res judicata precludes relitigation of a claim or issue actually litigated or which could have been properly raised." *Nelson,* 369 N.W.2d at 381 (citation omitted). On the other hand, collateral estoppel prevents relitigation of issues previously litigated. *Id.* Clearly, the application of res judicata provides a greater potential for issue preclusion. Thus, our analysis will focus on res judicata.

[¶ 23.] Application of res judicata is dependent upon a definition of the scope of the claim involved in the first action. Res judicata should be applied: "[t]o the extent that a second action advances any part of the same claim or cause of action, an oth-

---

3. SDCL 10–6–33.1 was amended in 1998. As the assessment at issue occurred prior to the 1998 amendment, the 1991 version of the statute will be applied.

4. In *Gould* we noted our Constitution specifically states that agricultural land constitutes a separate class. *See* S.D. Const. art. VIII,

§ 15. If the Constitution had intended to create more than one class for agricultural land it would have said so. Agriculture was to be designated as one class of property and all other properties are the other classes of property. 1997 SD 129 at ¶ 13, 570 N.W.2d at 849.

erwise qualified judgment in the first action prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." 18 Wright, Miller & Cooper, Federal Practice and Procedure: *Res Judicata* § 4407 at 48 (1981).

[¶ 24.] We have applied the doctrine of res judicata before in tax cases. *Schell,* 305 N.W.2d at 922–3. We first addressed the question of whether res judicata may be applied to a subsequent real estate valuation in *Sabow v. Pennington County,* 500 N.W.2d 257, 258 (S.D.1993). In *Sabow,* we noted the majority of other jurisdictions supported the proposition that assessments for taxation purposes are not res judicata concerning the property's value for succeeding years because each tax period gives rise to a new cause of action. 500 N.W.2d at 259. The determination of property value as of a particular date is not conclusive as to the value of the property on subsequent dates. *Id.* "Year by year an assessor must use his own judgment and must verify the roll, [therefore] the doctrine of res judicata can have no true application to the issues of value in recurring assessment proceedings." *Poindexter v. Hand County Bd. of Equalization,* 1997 SD 71, ¶ 14, 565 N.W.2d 86, 90.

[¶ 25.] While the value assessed may not be subject to res judicata, the method by which the land is classified and assessed may be barred by res judicata.[5] *Poindexter,* 1997 SD 71, ¶ 15, 565 N.W.2d at 90. In Shevling's case he is not claiming res judicata as to the amount of the assessment, but rather is claiming res judicata as to the method of the assessment.

[¶ 26.] The trial court found in the assessment method used in 1997, the Director of Equalization improperly failed to consider the facts that while the land had a soil capable of irrigation and water was nearby, the land still was not-irrigable as: (1) only level land can be successfully irrigated and the uneven terrain of Shelving's land together with the cost of preparation made such preparation cost prohibitive, and (2) the water right possessed by Shevling was only a junior right which precluded access to water during July, August and September when it is needed if one is to successfully irrigate. The court further found that this method of assessment resulted in two separate classes of property within agricultural land, irrigable and non-irrigable. As Butte County never appealed this 1997 ruling, its correctness is not before us and is binding on the County. Thus, we now face the narrow question of whether the 1998 assessment is so similar to the 1997 as to invoke the doctrine of res judicata.

[¶ 27.] The trial court could not discern any difference between the method in the 1998 assessment and the method the court found improper and unconstitutional in the 1997 assessment. We disagree.

[¶ 28.] In the 1998 appeal now before us the trial court noted the Director of Equalization made her 1998 assessment in the following manner. First the Director analyzed each agricultural sale and determined the value of irrigable land and non-irrigable land. She then performed a separate analysis on the land to determine if it was irrigable or non-irrigable based on soil types. However, according to her affidavit, she then proceeded to cure the problem areas that had resulted in the trial court's striking down of the 1997 assessment:

16. While completing the assessment of the property owned in part by Mr. Shevling, I personally viewed and considered the soil type, terrain and topographical condition of the property, the junior non-transferable water

---

5. Because of the incomplete record, we did not decide *Poindexter* on the basis that the method by which land is classified could be barred by res judicata. However, we did note that a prior decision concerning method of assessment could operate as res judicata. *Poindexter,* 1997 SD 71, ¶ 15, 565 N.W.2d at 90.

rights that allow Mr. Shevling to irrigate 219 acres, and the market value. Furthermore, I have been informed by the Water Resource Division that there are not specific months restrictions on junior water rights.

17. Based upon my analysis, I determined that all of Section 14 should be valued as non-irrigable cropland. While the soil types are irrigable, I did not believe it was feasible. By looking at the terrain it is evident that the parcel of land was set up to benefit from a spreader dam. A junior non-transferable water right would not be of benefit to this particular parcel of land.

18. Upon viewing Section 11 of Mr. Shevling's property, I again determined not all the property should be viewed as irrigable. While the soils are irrigable, I found large rock patches, steep slopes and brush covered areas. Thus, making the soils non-irrigable. However, I did view 43 acres of property in Section 11 which I did believe were irrigable based upon the gentle slope, terrain and topography.

[¶ 29.] We hold today that the doctrine of res judicata does not apply as the County has established a material question of fact as to whether its current assessment procedure has cured the faults cited by the trial court in striking down the 1997 assessment. In so doing we express no opinion on the legality of the County's current assessment methods. We reverse and remand this case for trial on the merits as to the legality of the County's current assessment methods.

[¶ 30.] MILLER, Chief Justice and AMUNDSON and KONENKAMP, Justices, concur.

[¶ 31.] SABERS, Justice, concurs in result.

SABERS, Justice (concurring in result).

[¶ 32.] I concur in result because res judicata does not apply to annual assessments, except as to the method of assessment, and there are genuine issues of material fact as to the methods used in 1998 as opposed to 1997.