2001 SD 127

**CITY OF PIERRE, Plaintiff and Appellee,**

v.

**Henry BLACKWELL, Sr., Defendant and Appellant.**

**No. 21754.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 28, 2001.

Decided Oct. 24, 2001.

Travis Jones, Assistant Pierre City Attorney, Pierre, for plaintiff and appellee.

Lelia L. Hood, Pierre, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1.] Henry Blackwell, Sr. (Blackwell) is the owner of a dog declared by an animal control officer to be "dangerous" pursuant to Pierre City Ordinance § 10–3–111. He was subsequently convicted under Pierre City Ordinance § 10–3–117, which makes it a crime to violate § 10–3–111. Blackwell challenges the conviction on the basis that the ordinances them-selves are unconstitutional and that his constitutional right to procedural due process has been violated. We hold the ordinances to be constitutional but reverse and remand for determination on the factual issue of the dog's dangerousness.

**FACTS AND PROCEDURE**

[¶ 2.] On June 27, 2000, Blackwell's family dog was reported to have bitten a 14–year old girl in the alley behind the property of the Blackwell's neighbors. As a result, the dog was declared by the reporting animal control officer to be a "dangerous animal" under Pierre City Ordinance § 10–3–111. The dog was impounded and Blackwell was sent notice of the determination by registered mail.

[¶ 3.] Upon receipt of the notice, Blackwell refused to comply with several of the requirements set forth in § 10–3–111. Specifically, he refused: (1) to keep the dog muzzled, leashed, and in the control of a person aged 18 years or older whenever the dog is outdoors; (2) to have the dog injected with an identification microchip; and (3) to carry a minimum of $100,000 of liability insurance on the animal. Although the ordinance provides that the animal may be impounded at the owner's expense until he proves compliance with all of these requirements, the dog was released on July 6, 2000, by authority of the City attorney, pending Blackwell's criminal trial for noncompliance.

[¶ 4.] On July 24, 2000, animal control witnessed the dog outside the Blackwell home with a leash on but with no one in direct control. When the animal control officer spoke with Blackwell and attempted to impound the dog again, Blackwell refused to comply. Another notice of the declaration of dangerousness and a demand to impound the dog was sent to Blackwell via registered mail. On August 11, when another attempt to impound the

dog was made, Blackwell again refused to comply. The City of Pierre (the City) filed its criminal complaint against Blackwell on August 18, 2000.

[¶ 5.] The parties proceeded to a bench trial on November 8, 2000. There was no dispute as to Blackwell's failure to comply with the ordinance. Thus, the only issue at trial was the dog's dangerousness. Both Blackwell and the City presented evidence regarding the dog's categorization as a "dangerous animal." The trial court, however, concluded an independent factual determination of the dog's disposition was not appropriate, and therefore merely reviewed the animal control officer's determination for its legality. The court held that determination to be neither arbitrary nor capricious and therefore legally made.

[¶ 6.] Blackwell was convicted under Pierre City Ordinance § 10–3–117 and was ordered to pay a fine of $200 plus costs. The fine was, however, suspended on the condition that he surrender the dog for impoundment in compliance with subsection (C) of § 10–3–111. Blackwell appeals from the court's order raising two issues:

1. Whether Pierre City Ordinances § 10–3–111 and § 10–3–117 are unconstitutional on their face, as a violation of due process, when they allow for the adjudication of a dog's dangerousness without a prior hearing.

2. Whether the trial court's criminal sentence under § 10–3–117 for a violation of § 10–3–111 amounted to a deprivation of property without a proper criminal trial, which thereby violated Blackwell's constitutional right to procedural due process.

## STANDARD OF REVIEW

[¶ 7.] Constitutional interpretation presents a question of law and is therefore reviewed by this Court de novo. *Steinkruger v. Miller*, 2000 SD 83, ¶ 8, 612 N.W.2d 591, 595 (citations omitted).

## ANALYSIS AND DECISION

[¶ 8.] **1. Whether Pierre City Ordinances § 10–3–111 and § 10–3–117 are unconstitutional on their face, as a violation of due process, when they allow for the adjudication of a dog's dangerousness without a prior hearing.**

[¶ 9.] In *Fortier v. City of Spearfish*, 433 N.W.2d 228, 230–31 (S.D.1988), this Court stated "[i]t is well settled in this state that any legislative enactment ... is presumed reasonable, valid and constitutional." (citations omitted). Thus, the party attacking a municipal ordinance bears the heavy burden of overcoming this presumption of validity by showing the ordinance is both unreasonable and arbitrary. *Id.* at 231. Blackwell has failed to carry this burden by presenting no evidence that indicates that Pierre City Ordinances § 10–3–111 and § 10–3–117 are either unreasonable or arbitrary on their face.

[¶ 10.] "[C]ities derive their right to regulate from the Legislature." *City of Marion v. Schoenwald*, 2001 SD 95, ¶ 6, 631 N.W.2d 213, 216 (citations omitted). The only express enabling authority granted to cities by the legislature regarding the regulation of dogs is found in SDCL 9–29–12, which provides that the city may regulate, prohibit, impound and tax "dogs running at large." Cities, however, are also vested with the authority to declare, prevent, abate and remove nuisances under SDCL 9–29–13, as well as the authority to exercise jurisdiction to promote the health, welfare, and safety of the community under SDCL 9–29–1. Beyond these express grants of authority, cities are allowed to exercise those powers implied from, or incidental to, the ef-

fectuation of their express authority. *City of Watertown v. Meseberg*, 82 S.D. 250, 144 N.W.2d 42, 44 (1966). Thus, municipalities may freely exercise police power to regulate pet ownership so long as the ordinance is reasonable and the means employed are necessary to accomplish a legitimate governmental interest. *Schoenwald*, 2001 SD 95 at ¶ 6, 631 N.W.2d at 216.

[¶ 11.] The ordinances at issue in this case advance a legitimate public safety objective. They are aimed at preventing the tragic consequences associated with uncontrolled dangerous pets. The physical danger that some animals pose to citizens, particularly in populated or urban communities, is certainly a matter of public and governmental concern.

> From our extensive research on similar decisions throughout the country, we think it significant that with the growing urbanization over the past fifty years, courts have become increasingly deferential to local authorities in upholding diverse pet control measures.

*Schoenwald*, 2001 SD 95 at ¶ 13, 631 N.W.2d at 217. Furthermore, the means employed by the City to control such animals do not unreasonably exceed the City's regulatory authority. *See id.* Therefore, we find the subject matter of the ordinances is constitutional.

[¶ 12.] **2. Whether the trial court's criminal sentence under § 10–3–117 for a violation of § 10–3–111 amounted to a deprivation of property without a proper criminal trial, which thereby violated Blackwell's constitutional right to procedural due process.**

[¶ 13.] Under the Fourteenth Amendment to the United States Constitu-

tion, as well as Article VI, § 2 of the South Dakota Constitution, "no person shall be deprived of life, liberty, or property without due process of the law." Due process guarantees that notice and the right to be heard are granted in a "meaningful time and in a meaningful manner." *Hollander v. Douglas Co.*, 2000 SD 159, ¶ 17, 620 N.W.2d 181, 186 (citations omitted). Such guarantees are fundamental.

[¶ 14.] The trial court's ruling under § 10–3–111 and § 10–3–117 operated to deprive Blackwell of a protected property interest in his dog. While the property interest in a dog is of an imperfect or qualified nature, the dog is property nonetheless. *Sentell v. New Orleans & C.R. Co.*, 166 U.S. 698, 705, 17 S.Ct. 693, 696, 41 L.Ed. 1169 (1897). Thus, absent exigent circumstances, the City was required to provide Blackwell with notice, an opportunity to be heard and a proper criminal adjudication by a judicial officer. *Hollander*, 2000 SD 159 at ¶ 17, 620 N.W.2d at 186. The requirement of notice and an opportunity to be heard are not disputed in this case. The requirement of a hearing by a disinterested judicial officer, however, was not satisfied.

[¶ 15.] The City must be required to prove, as an element of the crime, that the dog was dangerous beyond a reasonable doubt. *See* SDCL 23A–22–3 (requiring acquittal in criminal action where reasonable doubt exists). Blackwell was charged under Pierre City Ordinance § 10–3–117, which criminalizes noncompliance with § 10–3–111. If the City had given Blackwell a civil hearing,[1] it need only have proved the disposition of the dog by a preponderance of the evidence. The

---

1. Blackwell also launches an independent constitutional attack on § 10–3–111 on due process grounds. While the ordinance at is-

sue does not directly provide for a civil hearing on the determination of dangerousness, neither does it forbid such a hearing. Indeed,

City, however, chose to bring criminal charges against Blackwell and therefore must carry the appropriate burden of proof.

[¶ 16.] While evidence regarding the dangerousness of the dog was presented by both sides at trial, there was no independent evaluation of this evidence by the trial court.[2] The court stated "it is not a judicial function to try de novo a declaration of dangerousness by the City." In so doing, the trial court relied upon the analogy of judicial review of a hearing conducted before a school board. There, however, the board acts as a neutral factfinder and the proceedings are civil in nature. Here, there was no independent determination of dangerousness by a neutral judicial officer as part of the criminal proceeding.

[¶ 17.] In refusing to evaluate the evidence and make a finding of fact on health, welfare and safety of the citizens. Under such circumstances, subsequent judicial consideration may become impracticable.

---

the language of the statute implies the necessity of a hearing to evaluate the official's determination in light of facts that may not have been known at the time of his decision. The ordinance sets forth certain circumstances in which an animal may be declared dangerous. *See* § 10–3–11(A)(1), (2). It also provides exceptions to these circumstances. *See* § 10–3–111(A)(3). These exceptions include instances where the injury sustained was in the course of a willful trespass, the commission of a crime, or the teasing or abusing of the animal. *Id.* This language indicates that one may dispute the declaration of dangerousness under mitigating circumstances, a dispute logically done in the course of a hearing before a disinterested judicial officer.

The City argues that Blackwell waived any right to due process by not requesting such a hearing. Waiver of one's right to be heard, however, must be made "knowingly and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *State v. Christian,* 1999 SD 4, ¶ 23, 588 N.W.2d 881, 885 (quoting *Smith v. Board of Pardons and Paroles,* 515 N.W.2d 219, 225 (S.D.1994) (citations omitted)). Blackwell did not knowingly and intelligently waive his right to procedural due process in this case. The City at no time offered Blackwell a civil type hearing. When prosecuted, Blackwell demanded a trial and, at trial, he demanded a judicial determination on the issue of dangerousness.

2. Even in a civil context, the animal control officer's claim that he made the dangerousness determination in compliance with statutory guidelines is not sufficient absent exigent circumstances. We recognize that there may be times when an emergency exists, or when immediate action is necessary to protect the

*See Sentell,* 166 U.S. at 700–01, 17 S.Ct. at 694–95. Under non-exigent circumstances, however, due process protects property rights by balancing the need to protect the public welfare against the specific type of property right involved. "The formality and procedural requisites of a hearing depend[ ] . . . on the nature of the subsequent proceedings and the importance of the interests involved." Appeal of Schramm, 414 N.W.2d 31, 34 (S.D.1987) (citing *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). Where no emergency exists, the officer's discretion alone does not suffice, particularly when it becomes the basis for a criminal conviction rather than a civil matter.

In this case, no emergency existed. Indeed, the whole process was allowed to continue for over six months, in which time the dog was impounded and released more than once. After the first 10 days of impoundment, the City attorney authorized the dog's release pending trial. Animal control officers merely spoke to Blackwell in their attempt to re-impound the dog when Blackwell was found in violation of the ordinance. After trial, the court ordered a stay of execution dependent upon Blackwell's compliance with the ordinance and released the dog again without objection from the City. Clearly, no drastic immediate measures were necessary. Based on the facts of this case, even if the City had proceeded against Blackwell civilly, it could easily have afforded Blackwell some form of civil hearing before a neutral judicial officer without endangering the health, welfare or safety of the community or its citizens.

the issue of the dog's dangerousness, the trial court did not hold the City to its burden of proof. Because the trial court merely reviewed the animal control officer's decision for its legality, we find that due process was not served by the trial in this case.

## CONCLUSION

[¶ 18.] We hold that Pierre City Ordinances § 10–3–111 and § 10–3–117 afford due process to owners of dogs subject to this type of municipal regulation. If the City opts for a civil hearing, absent exigent circumstances, the owner of a dog is entitled to a due process hearing on the issue of dangerousness. If the City pursues criminal charges under § 10–3–117, the dog owner is also entitled to a determination of dangerousness. For a criminal conviction, dangerousness must be established by the City beyond a reasonable doubt. As such, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

[¶ 19.] SABERS, Acting Chief Justice, and AMUNDSON and KONENKAMP, Justices, concur.

[¶ 20.] MILLER, Retired Chief Justice, was a member of the Court at the time this action was submitted, but was disqualified and did not participate.