#23717-a-RWS

**2006 SD 59**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

 v.

ANN PAIGE BABCOCK aka
ANN PAIGE DODSON,                         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE GLEN A. SEVERSON
Judge

* * * *

LAWRENCE E. LONG
Attorney General

CRAIG M. EICHSTADT
Deputy Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


DARREN J. MAGEE
Minnehaha County Public Defender
Sioux Falls, South Dakota                 Attorneys for defendant
                                          and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MAY 23, 2006

OPINION FILED **07/05/06**

#23717

SABERS, Justice

[¶1.]     Ann Paige Babcock (Babcock) was indicted for possessing methamphetamine and inhabiting a place where drugs are kept.  Prior to trial, she made a motion to suppress evidence, arguing:  (1) law enforcement's affidavit did not provide probable cause to justify the issuance of an "all persons search warrant" and (2) there were no exigent circumstances permitting law enforcement to forgo the "knock and announce" requirement in the warrant.  The circuit court denied the motion and Babcock was later convicted on both counts.  Babcock appeals the denial of her motion to suppress.  We affirm.

## Facts

[¶2.]     On August 24, 2004, law enforcement received the first of four anonymous "crime stoppers" calls alleging drug activity at a private residence at 1908 South Menlo Avenue in Sioux Falls, South Dakota.  The informant noted the following facts:  the residence was owned by a woman named Lori; there was lots of short-term traffic during all hours of the day; and two small children were being exposed to drug use and drug dealing.  A few hours later, another "crime stoppers" call was received from a different informant.  This caller set forth many of the same allegations as the first caller, but noted that there were "two little girls that live at the address" who are sometimes "locked out of the house for short periods of time when . . . people come over."

[¶3.]     Over the next couple of days, law enforcement received two additional calls alleging drug use at 1908 South Menlo.  One of the callers stated that there were two small children being neglected because there was "no food in the house"

and there were "needles lying around." Additionally, the caller stated the location of the drugs in the residence.

[¶4.] Law enforcement called a utility company and confirmed that a woman named Lori Aguirre (Aguirre) was receiving electrical services at 1908 South Menlo. Based on the four "crime stoppers" calls and confirmation a woman named Lori was living at the address, law enforcement decided to search a garbage dumpster located in an alley next to the residence.

[¶5.] Law enforcement found several baggies with corners cut out of them, baggie corners containing white residue, foil strips, a small amount of marijuana, and two syringes. Additionally, there was a letter from the South Dakota Department of Social Services (DSS) addressed to Aguirre requesting a meeting.

[¶6.] The foil strips and the white powder residue on the baggie corners tested positive for methamphetamine. Law enforcement contacted a representative from DSS. The representative told law enforcement that she had received allegations of drug use at the home of Aguirre, but was unable to confirm the activity because Aguirre did not return phone calls or allow any visits with her or her two children.

[¶7.] Based on this information, Detective Steven Fiegen (Fiegen) submitted an affidavit in support of an all persons search warrant for Aguirre's residence. Fiegen stated that based on his experience as a narcotics officer, it was common for individuals involved in drug distribution to remove the corners of baggies in a fashion similar to those found in Aguirre's trash. According to Fiegen, it was also common for individuals involved in drug distribution to have high levels of short

term traffic at their residence. He requested an "all persons" warrant for Aguirre's residence. He also requested a "no knock" provision in the warrant in order to protect the officers involved in the search and prevent the destruction of evidence.

[¶8.] The circuit court issued the "all persons" warrant, but denied the right to forgo the knock and announce requirement. The court permitted law enforcement to execute the warrant at anytime, day or night.

[¶9.] Officers from the narcotics unit of the Sioux Falls Police Department and Drug Enforcement Administration executed a search of Aguirre's residence on the afternoon of October 13, 2004. All the officers wore black shirts bearing police insignia. When they approached the back of the house, they observed a man standing in the upstairs window. The officers yelled at the man "don't move, don't move, police, search warrant." The individual looked down at the officers and stepped out of view. The officers yelled for him to return to no avail. At that point the officers decided to enter the home. Upon entering the home, officers were able to locate one person sleeping in the basement and six people in an upstairs bedroom. Among the people upstairs were Babcock and Aguirre. A search of the home and individuals yielded methamphetamine, a methamphetamine pipe, baggies with the corners cut out of them, a hand scale, one spoon, nine syringes, a zip lock baggie, and marijuana.

[¶10.] Babcock was indicted on one count of possession of methamphetamine and one count of inhabiting a place where drugs are kept. Prior to trial she made a motion to suppress the evidence, arguing that Fiegen's affidavit was insufficient to support probable cause and, alternatively, there were no exigent circumstances

permitting law enforcement officers to forgo the knock and announce requirement.

Babcock was convicted on both counts. She appeals, raising two issues.

1. Whether Fiegen's affidavit provided probable cause for the issuance of an "all persons" search warrant.

2. Whether exigent circumstances permitted law enforcement officers to forgo the knock and announce requirement.

**Standard of Review**

[¶11.]     We review challenges to the sufficiency of search warrants in a highly deferential manner, examining the totality of the circumstances to decide if there was at least a "substantial basis" for the issuing judge's finding of probable cause. State v. Jackson, 2000 SD 113, ¶8, 616 NW2d 412, 416 (citing Illinois v. Gates, 462 US 213, 238-39, 103 SCt 2317, 2332, 76 LEd2d 527, 548 (1983) (citations omitted)). "'A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.'" *Id.* ¶9 (quoting Massachusetts v. Upton, 466 US 727, 733, 104 SCt 2085, 2088, 80 LEd2d 721, 727 (1984)). Our review of the issuing court's decision to grant the search warrant is done independently of the conclusion reached by the suppression court. *Id.* ¶8.

[¶12.]     As to the exigent circumstances issue, we review the circuit court's factual findings under the clearly erroneous standard. State v. Kottman, 2005 SD 116, ¶9, 707 NW2d 114, 118. Once the facts have been determined, however, application of a legal standard to those facts is reviewed *de novo*. *Id.*

*1. Probable cause*

[¶13.]       In *Jackson*, we held that "all persons" search warrants are not per se violative of the Fourth Amendment.  2000 SD 113, ¶14, 616 NW2d at 417.  Instead, the validity of such warrants, "like the validity of any search warrant, depends on the probable cause offered to support it."  *Id.* ¶14 (citing Ybarra v. Illinois*, 444 US 85, 91, 100 SCt 338, 342, 62 LEd2d 238, 245 (1979)).  In examining an affidavit in support of an "all persons" search warrant, the inquiry is:

> whether the affidavit gave sufficient particularity to conclude that there was good reason to believe that anyone present would probably be a participant in the illegal drug activities at [the residence].  The key to assessing an "all persons" warrant is to examine whether there was a sufficient nexus among the criminal activity, the place of the activity, and the persons in the place to establish probable cause.  Those courts upholding "all persons" warrants find such nexus and those courts striking them down conclude no such nexus was shown.

*Id.* ¶15, 616 NW2d at 418 (internal citations and quotations omitted).  Additionally, we look to the four corners of the affidavit in determining whether it provided probable cause for issuing the warrant.  *Id.* ¶11, 616 NW2d 416.  Thus, "the existence of probable cause for the search warrant must rise or fall on the affidavit itself which was the only evidence presented to the [court] for [its] determination of probable cause."  *Id.* (quoting State v. Smith*, 281 NW2d 430, 433 (SD 1979)).

[¶14.]       Two elements are often crucial to whether an anonymous tip provides a substantial basis for the issuing courts determination of probable cause:  (1) an explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, and (2) the extent to which the tip is corroborated by the officer's own investigation.  State v. Raveydts, 2004 SD 134, ¶¶11-12, 691

NW2d 290, 295 (citing *Gates*, 462 US at 234-44, 103 SCt at 2330-35, 76 LEd2d 527). In this case, the affidavit set forth the anonymous "crime stoppers" calls reciting short term traffic at all hours, children being locked out of the house during these visits, needles and drugs lying around the house, etc. The affidavit also stated that all of the anonymous callers named Aguirre as the primary resident. Finally, the affidavit noted that one of the informants gave a detailed description of where Aguirre kept her drugs. Thus, the four calls, when viewed collectively, included a detailed description of drug use and distribution, as well as some first hand observations.

[¶15.]     More importantly, the affidavit set forth law enforcement's independent corroboration of the "crime stoppers" calls. Law enforcement determined that Aguirre resided at 1908 South Menlo. Additionally, they confirmed she had two children whom DSS was seeking to interview based on allegations of neglect and illegal drug use by Aguirre. Finally, they found foil strips, numerous baggies, marijuana, methamphetamine residue, and two syringes. In his affidavit, Fiegen stated that the baggies with cut corners were more indicative of drug distribution, than drug ingestion. Under these circumstances, a substantial basis existed for the issuing court's determination of a fair probability that Aguirre and anyone at her residence would be engaged in the use, sale, or distribution of illegal drugs. As a result, there was probable cause for the issuance of an "all persons" search warrant for Aguirre's residence.

[¶16.]     Babcock attempts to distinguish *Raveydts* and *Jackson* in arguing that there was no probable cause to support the issuance of the "all persons" warrant.

Babcock points out that the police in *Raveydts* were able to corroborate a large amount of short term traffic, as well as license plate numbers that belonged to known drug dealers. 2004 SD 134, ¶4, 691 NW2d at 292. In this case, law enforcement did not witness large amounts of short term traffic, although only one evening was spent in an attempt to corroborate this claim. However, failure to corroborate the short term traffic is not fatal because "[w]hat amount of evidence is required to form probable cause is not a question susceptible to formulaic solutions." *Jackson*, 2000 SD 113, ¶22, 616 NW2d at 420 (citing People v. Fino, 14 NY2d 160, 250 NYS2d 47, 199 NE2d 151, 153 (1964)). There will often be facts in some cases that are absent in others. Here, the numerous drug-related items recovered from Babcock's trash coupled with other corroborating information provided substantial support for the "all persons" search warrant.

[¶17.]    In her attempt at distinguishing *Jackson*, Babcock points out the *Jackson* search warrant was executed during evening hours, while the warrant in the present case was executed in the afternoon. While that fact may have provided more support to the validity of the warrant in *Jackson*, the absence of a night time execution does not render the warrant unconstitutional in this case. Drug dealing is not an enterprise that is exclusively nocturnal.

### 2.    *Exigent circumstances*

[¶18.]    Law enforcement's failure to knock and announce their presence is justified in cases where exigent circumstances exist. State v. Max, 263 NW2d 685, 689 (SD 1978). Exigent circumstances exist when police officers have a good faith

#23717

belief that they are in peril of bodily harm, i*d*., or there is a risk that evidence will be destroyed. State v. Hess, 2004 SD 60, ¶25, 690 NW2d 314, 325.

[¶19.]     In this case, law enforcement saw an individual standing in one of the windows of the Aguirre residence. They announced their presence and commanded the individual not to move. The individual did not obey, and stepped out of view. Fiegen testified that because this was a drug raid, the officers believed the individual could have taken the opportunity to find a weapon, destroy evidence, or notify others. Under these circumstances, the circuit court did not err in determining exigent circumstances justified law enforcement's failure to knock before entering.*

[¶20.]     Affirmed.

[¶21.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

*     After the briefs were filed and considered in this case, the United States Supreme Court decided Hudson v. Michigan, 547 US ___, 126 SCt 2159 (2006). In *Hudson*, the Court declined to apply the exclusionary rule to evidence seized by law enforcement, even though the officers failed to make a proper knock and announce. *Hudson*, however, does not apply to this case because we have determined exigent circumstances justified law enforcement in failing to knock before entering. Therefore, we leave application of the *Hudson* case for another day.