#25408-a-DG

**2010 SD 50**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA.            Plaintiff and Appellee,

    v.

FIFTEEN IMPOUNDED CATS,            Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE LORI S. WILBUR
Judge

* * * *

KELLY MARNETTE
Hughes County State's Attorney

WENDY KLOEPPNER
Hughes County Deputy
State's Attorney                         Attorneys for plaintiff
Pierre, South Dakota                     and appellee.

PATRICIA EDWARDS
Pierre, South Dakota                     Pro se.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 22, 2010

OPINION FILED **06/23/10**

#25408
Gilbertson, Chief Justice

[¶1.]    Patricia Edwards appeals circuit court orders ratifying the impoundment of a large number of cats she was transporting in her automobile and for disposition of the cats. We affirm.

FACTS

[¶2.]    At approximately 11:15 p.m. on August 13, 2009, a police officer for the City of Pierre, South Dakota was dispatched to a local convenience store to respond to a complaint about a car parked in the parking lot occupied by a woman and a large number of cats. The officer proceeded to the parking lot and pulled up behind the car as its driver began to back out of the vehicle's parking space, nearly backing into the patrol car. At that point, the officer observed that the view out of the back window of the other car was obstructed by numerous cats climbing on the seat backs and rear dashboard inside the vehicle. The officer approached the driver of the other vehicle and identified her as Edwards.

[¶3.]    Edwards provided the officer with some information about having traveled from Texas, into South Dakota, through Pierre, and to Huron. Edwards further indicated that she was traveling back through Pierre on her way to Billings, Montana, and eventually back to Texas. Edwards stated that she had fifteen cats, that she had been living out of her car for several days and that she did not have any money.

[¶4.]    In addition to the cats, the officer could see that Edwards's vehicle was crammed full of personal belongings and clutter stacked on both the front passenger

seat and all across the rear passenger area.[1]  The clutter allowed the cats to roam freely through the vehicle at a level or height that interfered with the driver's visibility and limited her ability to safely operate and control the vehicle.

[¶5.]        The officer's further inspection of Edwards's car revealed that it did not contain any kennels or carriers suitable for safely transporting the cats, that there was only one litter box in the vehicle, and that the litter box needed to be cleaned out.  There was also a strong pet odor emanating from the vehicle.  Although Edwards indicated that the cats were all spayed and neutered, she further stated that the cats had destroyed those treatment records.

[¶6.]        Based upon his observations of Edwards's vehicle, his safety concerns and his concerns for the welfare of the animals, the officer impounded Edwards's cats and placed them in a local kennel under the care of a veterinarian.  In carrying out the impoundment, the officer was assisted and advised by a board member with the local humane society.

[¶7.]        A hearing to ratify the officer's impoundment of the cats was held on August 19, 2009.  At the close of the hearing, the court expressed concern with the visibility and safety issues related to Edwards's transportation of her cats and particular concern with Edwards's ability to drive while fifteen small animals were roaming loose in her vehicle.  On that basis, the court found exigent circumstances sufficient to ratify the impoundment of the cats.  The court recommended that

---

1.    Pictures of the interior of the vehicle contained in the settled record reflect that it was crammed full of boxes, coolers, blankets, clothes, two liter bottles full of water, books, cooking utensils, a large bag of cat food and a large and dirty litter box.  The vehicle appears to have been filthy.

Edwards obtain legal counsel and work with counsel and the state's attorney on a plan to get her cats back and to safely transport them. The state's attorney also advised Edwards as to her financial responsibility for the costs of caring for her cats while under impoundment.

[¶8.] The State subsequently filed a motion for disposition of the impounded cats and a further hearing on the matter was held on August 24, 2009. During the hearing, the State requested that the cats be transferred to the local humane society for adoption into new homes. Although Edwards requested that she be allowed to take her cats and leave, she presented no plan to pay for the costs of their care, to care for them herself or to safely transport them. At the close of the hearing, the court entered its order transferring ownership of the cats to the local humane society for adoption and terminating Edwards's rights over them. Edwards appeals.

ISSUE ONE

[¶9.] **Whether Edwards's constitutional rights were violated in the impoundment of her cats.**

[¶10.] Edwards claims various violations of her state and federal constitutional rights in the impoundment of her cats. However, she concedes that she did not preserve her constitutional claims before the circuit court. Even issues over the denial of constitutional rights may be deemed waived by failure to take action to preserve the issues for appeal. *See e.g.* Schlenker v. South Dakota Dept. of Public Safety, 318 NW2d 351, 353 (SD 1982).

[¶11.] Edwards seeks application of the plain error doctrine to permit review of her constitutional claims.

> Where an issue has not been preserved by objection at trial, our review is limited to whether the trial court committed plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court."
>
> "We invoke our discretion under the plain error rule cautiously and only in 'exceptional circumstances.'" "Plain error requires (1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" When plain error is alleged, the defendant bears the burden of showing the error was prejudicial.

State v. Bowker, 2008 SD 61, ¶ 45, 754 NW2d 56, 69-70 (citations omitted). Plain error has been held applicable in "rare instances" in civil cases where a "ludicrous result" "may well invite ridicule of the entire judicial system . . .." *See* First Premier Bank v. Kolcraft Enterprises, Inc., 2004 SD 92, ¶¶ 18 & 19, 686 NW2d 430, 442 (superseded on other grounds in *In re Estate of Duebendorfer*, 2006 SD 79, 721 NW2d 438). There is no plain error here.

[¶12.] Edwards argues that the statutes utilized by the State to impound her cats presume the necessity of a warrant or court order before seizing the animals unless an extreme or emergency situation exists. She contends no such emergency situation was present in this case because her cats were being humanely treated and were in no apparent distress.

[¶13.] The State proceeded under SDCL 40-1-5:

> Any peace officer, agent of the board, or agent or officer of any humane society finding an animal inhumanely treated, as defined in § 40-1-2.4, shall, pursuant to a warrant or court order, cause the animal to be impounded or otherwise properly cared for, and the expenses of such impoundment or care shall be a lien on the animal to be paid before the animal may be lawfully recovered.

> *However, a warrant or court order is not necessary if the animal is severely injured, severely diseased, or suffering and any delay in impounding the animal would continue to cause the animal extreme suffering or if other exigent circumstances exist.* If any animal is impounded or subjected to other action under this section without a warrant or court order, the officer or agent shall subsequently show cause for the impoundment or other action to the court, and the court shall issue an order ratifying the impoundment or action; or, if sufficient cause for the impoundment or action is not shown, the court shall order the return of the animal to the owner or other appropriate remedy.

(Emphasis added).

[¶14.]     "Statutes are to be accorded their plain meaning and effect." Premier Bank, N.A. v. Mahoney, 520 NW2d 894, 896 (SD 1994) (citing State v. Ohlmann, 444 NW2d 377, 378 (SD 1989)). The plain language of SDCL 40-1-5 emphasized above allows the warrantless impoundment of an animal under four circumstances:

    (1)    the animal is "severely injured,"

    (2)    the animal is "severely diseased,"

    (3)    the animal is "suffering and any delay in impounding the animal would continue to cause the animal extreme suffering *or* . . . "

    (4)    "other exigent circumstances exist."

SDCL 40-1-5 (emphasis added). Notably, these four circumstances are separated in the statute by the disjunctive word "or." *See* State v. Lafferty, 2006 SD 50, ¶ 7, 716 NW2d 782, 785 (referring to the word "or" as a disjunctive word). Thus, the existence of any one or more of these four circumstances allows the warrantless impoundment of an animal. *See* State v. Krebs, 2006 SD 43, ¶ 12, 714 NW2d 91, 96 (holding that because the applicable statute in the case listed its factors in the

disjunctive, "any one or more" of the factors sufficed to support the trial court's findings under the statute).

[¶15.]     The fourth circumstance allowing warrantless impoundment is the existence of "other exigent circumstances." SDCL 40-1-5.

> "Exigent circumstances exist when 'a situation demand[s] immediate attention with no time to obtain a warrant.'" State v. Dillon, 2007 SD 77, ¶ 18, 738 NW2d 57, 60 (quoting [State v. Hess, 2004 SD 60, ¶ 24, 680 NW2d 314, 325]); [State v. Meyer, 1998 SD 122, ¶ 23, 587 NW2d 719, 724] (citing State v. Heumiller, 317 NW2d 126, 129 (SD 1982)). The need to protect or preserve life or avoid serious injury presents that kind of situation. *Dillon*, 2007 SD 77, ¶ 20, 738 NW2d at 61 (citations omitted).

*Bowker*, 2008 SD 61, ¶ 19, 754 NW2d at 63. This Court has referred to similar principles in the context of exigent circumstances in animal control disputes. *See* City of Pierre v. Blackwell, 2001 SD 127, ¶ 16 n 2, 635 NW2d 581, 586 (stating that "[w]e recognize that there may be times when an emergency exists, or when immediate action is necessary to protect the health, welfare and safety of the citizens.").[2]

[¶16.]     Statutory interpretation also requires that we view SDCL ch 40-1 in conjunction with other statutes concerning a similar subject. City of Marion v. Schoenwald, 2001 SD 95, ¶ 8, 631 NW2d 213, 217. The impoundment occurred

---

2.    The 2006 amendment of SDCL 40-1-5 appears to be a statutory adoption of the "exigent circumstances" language from this Court's 2001 opinion in *Blackwell*. *See* 2006 SDSessL ch 211, § 8. It would also have the effect of broadening the scope of the ability of a governmental entity to act outside of municipalities where such authority had been previously recognized for decades. Since SDCL 9-29-1, 9-29-12 and 9-29-13 were not amended in 2006, one cannot ascertain any legislative intent to constrict the previous statutory authority granted to municipalities to regulate in this area.

within a municipality thus implicating the general statutory authority of a municipality to regulate domestic animals like cats. "South Dakota law permits municipalities broad power to regulate the keeping of" such animals. *Id.* ¶ 1, 631 NW2d at 215.[3] Moreover, in animal regulation, "[o]ur Court has a history of not interfering with municipal governments unless their actions are palpably arbitrary, unreasonable, or beyond their authority." *Id.* ¶ 7, 631 NW2d at 216. The reason is that we presume that municipalities are familiar with their local conditions and know their own needs. *Id.* ¶ 8, 631 NW2d at 217.

[¶17.]     As noted above, while municipalities possess general statutory authority to regulate the keeping of domestic animals, they also possess a broader power to regulate in this area from the authority "to maintain the health, safety and general welfare of the community and the right to abate nuisances." *Id.* ¶ 9, 631 NW2d at 217 (citing SDCL 9-29-1 and SDCL 9-29-13). "Public welfare includes maintaining a certain quality of life in a community. Unsanitary conditions . . . [and] obnoxious animal behavior of various sorts . . . can seriously disturb the peace and constitute a nuisance." *Id.* ¶ 13, 631 NW2d at 218.

> Beyond these express grants of authority [under SDCL 9-29-1, 9-29-12 and 9-29-13], cities are allowed to exercise those powers implied from, or incidental to, the

---

3.     The power to regulate domestic animals by a municipality dates back to the Dakota Territory. "In 1887, when the legislature provided for the incorporation of cities, it empowered the city council '[t]o regulate, restrain, and prohibit the running at large of horses, cattle, swine, sheep, goats, geese, and dogs . . . .'" Rapid City v. Tuning, 82 SD 442, 445, 147 NW2d 604, 606 (1967). "In almost all jurisdictions, municipal power to regulate animals kept as pets is broadly construed." *City of Marion*, 2001 SD 95, ¶ 10, 631 NW2d at 217 (citing 7 McQuillin, Municipal Corporations, § 24.284 at 203 (3rd ed 1998)).

> effectuation of their express authority. Thus, municipalities may freely exercise police power to regulate pet ownership so long as the ordinance is reasonable and the means employed are necessary to accomplish a legitimate governmental interest.

*Blackwell*, 2001 SD 127, ¶ 10, 635 NW2d at 584-85 (citations omitted).

[¶18.] Here, the circuit court found exigent circumstances justifying the impoundment of Edwards's cats in the health and safety hazards created by Edwards's traveling on a public roadway and through a crowded parking lot with fifteen small animals wandering around loose in her jam-packed vehicle to distract her and interfere with her ability to see where she was going. Beyond the unsanitary aspects of the situation, it presented a significant safety risk to the public. This incident occurred at a busy convenience store in Pierre on an August night. Because of the cats in the back window, Edwards failed to see the patrol car behind her and nearly backed into it. What if, instead of the officer's patrol car, a less visible child on a skateboard or bicycle had passed by at that same moment? If the safety of an endangered cat can constitute "exigent circumstances" even more so must a direct threat to the safety of the public in the area. In regard to injuries to children, "[w]e have seen the tragic consequences of unregulated or mismanaged pets." *City of Marion*, 2001 SD 95, ¶ 13, 631 NW2d at 218 (citing Tipton v. Town of Tabor, 1997 SD 96, 567 NW2d 351).[4]

---

4. The safety concern was crucial to the circuit court's upholding of the impoundment as stated in its decision, "I'm not talking about dirt or cleanliness at this point. I'm talking about visibility, safety, and how it is that a person can drive with 15 animals wandering around in the vehicle. . . . I'm going to ratify the impoundment."

[¶19.] The dissent is not persuaded that exigent circumstances existed in part because the officer did not issue Edwards a criminal citation in addition to impounding the cats. However, at that point the officer already knew that Edwards was indigent and simply exercised his discretion to abate the safety and sanitary risks to all who came near the car as well as to protect the cats in the car. In the context of controlling animals within a municipality, we have held, "*[l]aw enforcement entails more than simply reacting to violations; it encompasses the art of keeping the peace.*" E.P. v. Riley, 1999 SD 163, ¶ 19, 604 NW2d 7, 13 (emphasis original) (quoting *Tipton*, 1997 SD 96, ¶ 10, 567 NW2d at 356). As the North Dakota Supreme Court concluded with regard to other judgment calls made in an animal control situation: "The reasonable police officer will 'know it when [he [sees]] it.'" City of Belfield v. Kilkenny, 729 NW2d 120, 126-27 (ND 2007) (citing Jacobellis v. Ohio, 378 US 184, 197, 84 SCt 1676, 12 LEd2d 793 (1964) (Stewart, J., concurring) ("[T]he Court . . . was faced with the task of trying to define what may be indefinable. . . . But I know it when I see it . . ..")).

[¶20.] In summary, a trial court's factual findings as to the existence of exigent circumstances are reviewed under the clearly erroneous standard. State v. Babcock, 2006 SD 59, ¶ 12, 718 NW2d 624, 628. However, whether the facts constitute exigent circumstances is a mixed law-fact question reviewed de novo. *Id.*; Matter of Application No. 5189-3 to Extend Time, 467 NW2d 907, 914 (SD 1991). Given the open and obvious safety hazard presented by Edwards's traveling coterie of cats, the investigating officer here was clearly confronted with a situation demanding immediate attention to avoid serious injury and to protect the health, welfare and safety of citizens. Accordingly, the circuit court did not err in finding

that exigent circumstances justified the warrantless impoundment of Edwards's cats.[5]

[¶21.] Edwards next argues that in ratifying the impoundment of her cats the circuit court failed to make an independent evaluation, or to enter factual findings supported by actual evidence and conclusions supported by applicable law. Citing *Blackwell*, 2001 SD 127, 635 NW2d 581, Edwards argues this deprived her of due process of law.

[¶22.] *Blackwell* was a criminal case. Police officers made repeated attempts to impound a dog the police had previously deemed "dangerous" under a city ordinance. The owner was subsequently charged and convicted after a bench trial for violating an ordinance imposing certain requirements for keeping a dangerous animal. As part of the criminal proceedings, the court failed to make an independent factual determination as to whether the dog was "dangerous," instead yielding to the police officers' determination of that issue. This Court held that the city was required to prove, as an element of the crime, that the dog was dangerous beyond a reasonable doubt, and that the trial court's failure to evaluate the evidence and make an independent finding of fact on the issue of the dog's dangerousness deprived the defendant of due process.

---

5.  In reaching this conclusion, the distinction is emphasized between the safety risk in this case and that in more typical situations involving the transportation of a pet. In that regard, the significant factors are the large number of animals involved here and the fact that they were seen running loose and climbing in a jam-packed vehicle and clearly interfering with the driver's ability to see and focus on her driving task. These unique circumstances are not normally present in situations involving the transportation of a pet in a car.

[¶23.]    This was not a criminal case like *Blackwell* where the elements of an offense had to be proven beyond a reasonable doubt. Here, the court considered the evidence and applied the elements or standards under SDCL 40-1-5 in determining that exigent circumstances justified the impoundment of Edwards's cats. While the court did not enter written findings of fact and conclusions of law, it did make oral findings and conclusions. Although this Court has expressed a preference for written findings and conclusions, it has accepted oral findings and conclusions where the basis of the trial court's ruling is clear. *See* In re Guardianship and Conservatorship of Fischer, 2008 SD 51, ¶ 8, 752 NW2d 215, 217 (stating that generally the failure to file findings of fact and conclusions of law is reversible error, but that this Court may decide the appeal without further findings if it feels it is in a position to do so); State v. Stevenson, 2002 SD 120, ¶ 10, 652 NW2d 735, 739 (observing that this Court has accepted verbal findings and conclusions where the record leaves no room for speculation and conjecture concerning what the trial court found or concluded). Since the basis of the trial court's ruling in this case is clear, there is no necessity of a remand for the entry of written findings of fact and conclusions of law.

[¶24.]    Based upon the foregoing, there was no due process violation in the manner of the court's ruling on the State's motion for ratification of the impoundment of Edwards's cats. Accordingly, there was no violation of Edwards's constitutional rights rising to the level of plain error in the impoundment of Edwards's cats.

ISSUE TWO

**[¶25.]** **Whether the evidence is sufficient to sustain the order ratifying the impoundment of Edwards's cats.**

**[¶26.]** Edwards argues the evidence is insufficient to sustain the circuit court's ratification of the impoundment of her cats. A circuit court's findings are reviewed under the clearly erroneous standard.

> We will not set aside a [circuit] court's findings of fact unless they are clearly erroneous. A [circuit] court's finding is clearly erroneous if, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been made[.] All conflicts in the evidence must be resolved in favor of the [circuit] court's determinations. The credibility of the witnesses, the weight to be accorded their testimony, and the weight of the evidence must be determined by the [circuit] court and we give due regard to the [circuit] court's opportunity to observe the witnesses and the evidence. We review any documentary or deposition evidence under a de novo standard of review.

> "On review the successful party is entitled to the benefit of his version of the evidence and of all favorable inferences fairly deducible therefrom."

In re Estate of Pringle, 2008 SD 38, ¶ 18, 751 NW2d 277, 284 (citations omitted).

**[¶27.]** Edwards argues the evidence is insufficient to sustain the impoundment because there was no showing that her cats were being "inhumanely treated" as required by SDCL 40-1-5. Edwards then offers a lengthy analysis of what constitutes "inhumane treatment" of an animal under the applicable statutory definitions. However, as discussed under the first issue, SDCL 40-1-5 also allows the warrantless seizure of animals under "exigent circumstances" and the circuit court found exigent circumstances here. The evidence set forth under the first

issue, viewed in a light most favorable to the circuit court's finding of a safety hazard and exigent circumstances, was more than adequate to support the impoundment of Edwards's cats.

ISSUE THREE

[¶28.] **Whether Edwards's rights to due process of law were denied by the lack of adequate notice of the hearings in this matter.**

[¶29.] Generally, a person has a protected property interest in a domesticated animal and is entitled to due process of law in the deprivation of that interest. *See Blackwell*, 2001 SD 127, ¶¶ 13 & 14, 635 NW2d at 585. Due process requires notice and the right to be heard in a meaningful time and manner. *Id.*; Gul v. Center for Family Medicine, 2009 SD 12, ¶ 19, 762 NW2d 629, 635. Edwards argues she was deprived of due process here because she was not given adequate notice of the two hearings held in this matter.

[¶30.] Edwards appeared for both hearings and registered no complaint or objection to the notice provided. Moreover, at several points in the first hearing, the circuit court specifically offered her the opportunity for a continuance to consult with legal counsel, to come back with an attorney, or to prepare some sort of defense or plan or to provide further information as to why the cats should be returned to her. Edwards took no advantage of these opportunities and at no point in either hearing did she request additional time.

[¶31.] Generally, questions over personal jurisdiction, venue and notice must be raised at the first reasonable opportunity or they are waived. Kubik v. Route 252, Inc., 762 A2d 1119, 1123 (PaSuperCt 2000). Moreover, actual participation in legal proceedings waives irregularities in notice and service procedures and even a

lack of formal notice. Flanders v. Ford City Borough Council, 986 A2d 964, 973 (PaCommwCt 2009). *See also* Mattingly v. Charnes, 700 P2d 927, 928 (ColoCtApp 1985) (stating that one who is notified, appears and participates in a hearing cannot later be heard to complain as to the sufficiency of the notice he received); Day v. Kolar, 341 NW2d 598, 599 (Neb 1983) (stating that failure to object to the form of notice and acting on the notice generally waives any objection to the form of the notice); In re Welfare of H.S., 973 P2d 474, 483 (WashCtApp 1999) (stating that notice is a matter of personal jurisdiction, an objection to which is waived when a party appears and litigates the issues). This Court has applied similar principles. *See* Grajczyk v. Tasca, 2006 SD 55, ¶ 9, 717 NW2d 624, 628 (stating that defenses involving personal jurisdiction and insufficient service of process must be raised at the time of the first significant defensive move or are waived); Rapid City Educ. Ass'n on Behalf of Lynch v. Rapid City School Dist. No. 51-4, 446 NW2d 770, 771 (SD 1989) (stating that an objection to personal jurisdiction is waived if a party fails to object at the appropriate time).

[¶32.] Since Edwards actually participated in the hearings in this matter without any objection to personal jurisdiction or the sufficiency of notice, her arguments in this regard are waived. Although Edwards seeks to invoke plain error, she fails to demonstrate prejudice. *See Bowker*, 2008 SD 61, ¶ 45, 754 NW2d at 69-70 (stating that when plain error is alleged, the defendant bears the burden of showing the error was prejudicial).

[¶33.] "Prejudice" in the context of plain error requires a showing of a "reasonable probability" that, but for the error, the result of the proceeding would have been different. United States v. Rush-Richardson, 574 F3d 906, 911 (8thCir

2009). "'The defendant's burden is to "satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding."'" *Id.* (quoting United States v. Kent, 531 F3d 642, 655-56 (8thCir 2008). Edwards fails in any such showing here. The facts of this matter were never contested in any significant way. Edwards never disputed that the cats were running loose in her car and the pictures admitted into evidence reflect the deplorable conditions in the vehicle and that it was cluttered and jam-packed. Edwards never disputed that she nearly ran into the patrol car of the officer who impounded the cats. Her sole defense before the circuit court and this Court is that the cats were healthy, well-cared-for, and humanely treated. Yet, as discussed under the second issue, whether they were being treated humanely or not was not a relevant consideration in the court's determination that there were exigent circumstances resulting from the safety hazard posed by the roving cats.

[¶34.] In the absence of any showing of prejudice resulting from a defect in the notices of hearings in this matter, Edwards's due process claims are deemed waived.

[¶35.] Affirmed.

[¶36.] KONENKAMP and ZINTER, Justices, concur specially.

[¶37.] MEIERHENRY and SEVERSON, Justices, dissent.

KONENKAMP, Justice (concurring specially).

[¶38.] We have two questions before us: (1) did the officer have "sufficient cause" to believe that a cross-country trip with fifteen cats loose in an over-packed

car was inhumane treatment of animals? and (2) were there exigent circumstances justifying impoundment of the cats without a warrant or court order? The only statute cited to justify the officer's seizure and the circuit court's ratification of that seizure was SDCL 40-1-5, dealing with mistreatment or neglect of animals. Whether pedestrians, motorists, or the general public may have been endangered is not germane to these questions. The circuit court found that the "living conditions of the animals were neglectful," and focused on "visibility" and "safety." If safety was the basis for the decision, then only the safety of the cats was subject to inquiry.

[¶39.] On the question of inhumane treatment, the cats were travelling in a small car packed with belongings, leaving little room for movement. As noted by the officer, "there was a strong odor of ammonia emanating from the car." Edwards and the cats had been living in the car for several days, and Edwards had no money. Before residing in the car together that week, the cats had been cared for in Huron at a humane society shelter. A humane society officer testified that Edwards was not providing the standard of care necessary for cats.

[¶40.] On the question of exigent circumstances, an objectively reasonable officer could deduce that with the cats obstructing the driver's view of the road, in their cramped and squalid accommodations, the animals were subjected to mistreatment and neglect, and their immediate safety was in jeopardy. *See* SDCL 40-1-2.4; SDCL 40-1-5. The dissent is correct when it declares that the term exigent circumstances "must be read to refer to emergency situations where impoundment without a warrant or court order is necessary to protect the well-being of the animal." Indeed, the owner was transient; her automobile was her temporary

residence. She was passing through Pierre when she was reported at 11:15 at night. Therefore, exigent circumstances existed to immediately impound the animals for their safety. There being no error of law or clearly erroneous fact finding, the circuit court should be affirmed.

[¶41.]    ZINTER, Justice, joins this special writing.


SEVERSON, Justice (dissenting).

[¶42.]    Because the facts of this case do not constitute "exigent circumstances" as that phrase is used in SDCL 40-1-5, I respectfully dissent. The trial court's order ratifying the impoundment of Ms. Edwards's fifteen cats was error, and Ms. Edwards's cats should be returned to her care. Furthermore, the requirements of SDCL 40-1-5 were not met initially, and the State cannot require Ms. Edwards to pay the costs of her cats' care as a condition of their return to her.

[¶43.]    This case involves a matter of statutory interpretation. Our rules of statutory interpretation are well settled. "The purpose of statutory construction is to discover the true intention of the law, which is to be ascertained primarily from the language expressed in the statute." *In re* Guardianship of S.M.N., T.D.N., and T.L.N., 2010 SD 31, ¶9, 781 NW2d 213, 217-18 (quoting *In re* Guardianship and Conservatorship for T.H.M. and M.M.M., 2002 SD 13, ¶7, 640 NW2d 68, 71 (quoting Martinmaas v. Engelmann, 2000 SD 85, ¶49, 612 NW2d 600, 611)) (additional citation omitted). "The intent of a statute is determined from what the Legislature said, rather than what [this Court] thinks it should have said, and [this Court] must confine itself to the language used." *Id.* (citations omitted). "Words and phrases in a statute must be given their plain meaning and effect." *Id.* (citations omitted).

"When the language in a statute is clear, certain, and unambiguous, there is no

reason for construction, and this Court's only function is to declare the meaning of

the statute as clearly expressed." *Id.* (citations omitted).

[¶44.]        SDCL 40-1-5 provides the procedure for the impoundment of an

animal:

> Any peace officer, agent of the board, or agent or officer of any
> humane society finding an animal inhumanely treated, as
> defined in § 40-1-2.4, shall, pursuant to a warrant or court order,
> cause the animal to be impounded or otherwise properly cared
> for, and the expenses of such impoundment or care shall be a
> lien on the animal to be paid before the animal may be lawfully
> recovered.  However, a warrant or court order is not necessary if
> the animal is severely injured, severely diseased, or suffering
> and any delay in impounding the animal would continue to
> cause the animal extreme suffering or if other exigent
> circumstances exist.  If any animal is impounded or subjected to
> other action under this section without a warrant or court order,
> the officer or agent shall subsequently show cause for the
> impoundment or other action to the court, and the court shall
> issue an order ratifying the impoundment or action; or, if
> sufficient cause for the impoundment or action is not shown, the
> court shall order the return of the animal to the owner or other
> appropriate remedy.

SDCL 40-1-2.4, in turn, defines the inhumane treatment of an animal:

> [T]he inhumane treatment of an animal is any act of
> mistreatment, torture, cruelty, neglect, abandonment,
> mutilation, or inhumane slaughter of an animal that is not
> consistent with generally accepted training, use and husbandry
> procedures for the species, breed, physical condition, and type of
> animal.

Furthermore, SDCL 40-1-2.3 defines neglect:

> [T]he neglect of an animal is the failure to provide food, water,
> protection from the elements, adequate sanitation, adequate
> facilities, or care generally considered to be standard and
> accepted for an animal's health and well-being consistent with
> the species, breed, physical condition, and type of animal.

Finally, SDCL 40-1-2.2 defines mistreatment, torture, and cruelty of animals:

> [T]he mistreatment, torture, or cruelty of an animal is any act or omission whereby unnecessary, unjustifiable, or unreasonable physical pain or suffering is caused, permitted, or allowed to continue including acts of mutilation.

[¶45.]     A review of SDCL 40-1-5 and its accompanying definitions reveals that impoundment is appropriate in dire cases of animal abuse or in certain emergency situations. Under SDCL 40-1-5, an officer may, pursuant to a warrant or court order, impound an inhumanely treated animal. SDCL 40-1-5 also affords officers the authority to impound an animal without a warrant or court order if an animal is severely injured, severely diseased, or in extreme suffering. An officer is thus able to act quickly to protect the well-being of an animal in certain enumerated emergency situations. However, because not every emergency situation requiring immediate impoundment could be contemplated by the statute, SDCL 40-1-5 provides that a warrant or court order is not necessary for impoundment where "exigent circumstances" exist.

[¶46.]     The State argues that Officer Jandt properly seized Ms. Edwards's cats without a warrant or court order on the basis that "exigent circumstances" existed. Because the phrase "exigent circumstances" is ambiguous, we resort to canons of statutory construction to ascertain its meaning. *See S.M.N.*, 2010 SD 31, ¶9, 781 NW2d at 218 (citations omitted). "Under the canon of statutory construction known as *ejusdem generis*, 'where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of

the same general class as those enumerated.'"[6]  Argus Leader v. Hagen, 2007 SD 96, ¶18, 739 NW2d 475, 481 (quoting Nielson v. AT&T Corp., 1999 SD 99, ¶15, 597 NW2d 434, 439 (quoting Wendell v. S.D. Dep't of Transp., 1998 SD 130, ¶7, 587 NW2d 595, 597)) (additional citation omitted).  *See Goetz*, 2001 SD 138, ¶24, 636 NW2d at 682 (citing Sioux Falls Sch. Dist. v. Koupal, 526 NW2d 248, 252 (SD 1994); State v. Galati, 365 NW2d 575, 577 (1985)) (additional citation omitted).  The meaning of the phrase "exigent circumstances" must be discerned considering the context in which it is used.

[¶47.]     The general phrase "exigent circumstances" in SDCL 40-1-5 follows an enumeration of a particular class of things.  The particular class of things enumerated is emergency situations where impoundment is necessary to protect the

---

6.     The canon of *ejusdem generis* does not apply if the specifically enumerated class is exhaustive.

> [W]here the specific words embrace all the persons or objects of the class designated by the enumeration, the general words take a meaning beyond the class.  To apply the rule in this instance would render the general words meaningless for the reason that there is nothing of the same kind (*ejusdem generis*) to fall within their purview.  Its application, consequently, would contravene the more important rule of construction that all words are to be given effect. . . . In order to prevent their rejection as surplusage, the general words take an unrestricted meaning on the ground that the [L]egislature, by the addition of general words to an exhaustive enumeration, must have intended that they have meaning outside the class.

Goetz v. State, 2001 SD 138, ¶24, 636 NW2d 675, 682-83 (quoting 2A Sutherland, *Statutory Construction* § 47:21 (6th ed 2000)) (emphasis omitted).  Here, SDCL 40-1-5 does not specifically enumerate every situation in which an officer may impound an animal without a warrant or court order.  *Contra id.*  The canon of *ejusdem generis* therefore restricts the meaning of the general term "exigent circumstances," and the term does not take a meaning beyond the class.

well-being of an animal. According to the canon of *ejusdem generis*, the general phrase "exigent circumstances" cannot take a meaning beyond this particular class. *See Argus Leader*, 2007 SD 96, ¶18, 739 NW2d at 481 (citations omitted). Therefore, the term "exigent circumstances" must be read to refer to emergency situations where impoundment without a warrant or court order is necessary to protect the well-being of an animal. *See id. See also supra* ¶15 (citing *Blackwell*, 2001 SD 127, ¶16 n2, 635 NW2d at 586 n2 ("We recognize that there may be times when an emergency exists, or when immediate action is necessary to protect the health, welfare, and safety of the citizens. Under such circumstances, subsequent judicial consideration may become impracticable.")).

[¶48.] "[T]he construction of a statute and its application to the case at hand presents a question of law" that we review de novo. Tschetter v. Berven, 2001 SD 11, ¶6, 621 NW2d 372, 375 (quoting Shevling v. Butte Cty. Bd. of Comm'rs, 1999 SD 88, ¶12, 596 NW2d 728, 730). The trial court's factual findings are reviewed under the clearly erroneous standard. *Babcock*, 2006 SD 59, ¶12, 718 NW2d at 628 (citation omitted). Once the facts have been determined, however, whether those facts constitute "exigent circumstances" is reviewed de novo. *See id. See also S.M.N.*, 2010 SD 31, ¶11, 781 NW2d at 218 (citation omitted).

[¶49.] The State argues that "exigent circumstances" existed because Ms. Edwards's fifteen cats were not confined to kennels and obstructed her view while driving.[7] The State cites SDCL 32-26-43,[8] which relates to the maximum number

---

7. The majority cites *State v. Dillon*, 2007 SD 77, 738 NW2d 57, and others in support of its contention that the need to protect or preserve life and avoid serious injury are valid considerations in determining the existence of

(continued . . .)

of passengers in a vehicle and provides that a vehicle may not be loaded so as to obstruct the view of the driver. The State provides no authority for the notion that animals traveling in a vehicle must be confined to kennels. It strains credibility to conclude that the facts of this case constitute the type of emergency situation requiring an officer to act quickly to impound animals without a warrant or court order in order to protect the animals.

[¶50.] The State also suggests that impoundment was necessary due to Ms. Edwards's inhumane treatment and neglect of her cats. SDCL 40-1-5 provides, however, that an officer who finds an inhumanely treated animal must obtain a warrant or court order prior to impoundment. Had Officer Jandt believed that Ms. Edwards's cats were inhumanely treated, SDCL 40-1-5 required that he obtain a warrant or court order. If inhumane treatment rather than "exigent circumstances" was the basis of the impoundment, it was done in violation of SDCL 40-1-5 because Officer Jandt did not obtain a warrant or court order prior to impoundment.

[¶51.] Nevertheless, the State argues that Ms. Edwards's cats were

---

(. . . continued)

"exigent circumstances." *See supra* ¶15. Those cases, however, are inapplicable as they define the parameters of the exigent circumstances exception to the warrant requirement under the Fourth Amendment. In the present case, the meaning of the phrase "exigent circumstances" should be ascertained with reference to SDCL 40-1-5. It should not be borrowed from Fourth Amendment analysis.

8. SDCL 32-26-43 provides:

No person may drive a vehicle when it is so loaded, or when there are in the front seat such a number of persons, exceeding three, as to obstruct the view of the driver to the front or sides of the vehicle or as to interfere with the driver's control over the driving mechanism of the vehicle.

inhumanely treated and neglected because she failed to provide an adequate "facility for them to live and play." *See* SDCL 40-1-2.3, 2.4. The State contends that "[t]he cats had little or no room to move around, to exercise, or to play. . . . This undoubtedly caused unnecessary suffering to the cats by being confined for such long periods of time in such a small space." Yet, the State initially provided the cats no better facilities than Ms. Edwards. At the hearing on August 24, 2009, to allow the State to transfer ownership of the cats to the Humane Society, the trial court asked whether the cats were then living at the city pound. The State's Attorney replied, "Yes. And we have to remove them today. They are – they have been in cages and have only been able to get out for short periods of time. That is not the condition we want them in. We do not want them to be there any longer."

[¶52.] The question before this Court is not whether Ms. Edwards's cats lived in ideal conditions or whether they may receive better care elsewhere. The question is whether "exigent circumstances" existed to allow Officer Jandt to seize the animals without a warrant or court order. That question must be answered in the negative. Ms. Edwards provided her cats with food, water, protection from the elements, adequate sanitation, and affection. Her cats had been spayed or neutered and had received their immunizations. Indeed, Dr. Joseph Engelhart, a veterinarian in Huron, South Dakota, examined Ms. Edwards's cats one month prior to their seizure and found them in "good health" with "no evidence of neglect." Despite the State's avowed concerns regarding Ms. Edwards's ability to operate her vehicle amid her fifteen cats, the State did not cite her with a traffic violation. The claims of "exigent circumstances" and inhumane treatment are a pretext. If safe operation of the vehicle was the concern, the police should have addressed that

-23-

issue and not exposed the taxpayers to the cost of caring for animals wrongfully seized from Ms. Edwards.

[¶53.]     Ms. Edwards's cats should be returned to her care. The requirements of SDCL 40-1-5 were not met initially, and the State cannot require Ms. Edwards to pay the costs of her cats' care as a condition of their return to her. *See* SDCL 40-1-5 ("[T]he expenses of such impoundment or care shall be a lien on the animal to be paid before the animal may be lawfully recovered."). Because I would reverse on this basis, it is not necessary to address the remainder of Ms. Edwards's arguments on appeal.

[¶54.]     MEIERHENRY, Justice, joins this dissent.